Leslie Wayne **PHILLIPS**

v.

The **STATE** of Texas.

Fred Allen **HINKLE**

v.

The **STATE** of Texas.

Nos. 67,562, 68,242.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

Rehearing Denied Nov. 16, 1983.

J.T. Mora, Jr., (Court-appointed), La-Marque, for Phillips.

Anthony P. Griffin, Galveston, for Hinkle.

James F. Hury, Jr., Dist. Atty. and E.D. McKinney, Jr., Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

These are appeals from convictions for aggravated robbery, V.T.C.A. Penal Code,

Sec. 29.03. Punishment was assessed by the jury against each appellant at forty years confinement in the Texas Department of Corrections.[1] The appellants contend: that the State failed to provide them with a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution, Art. I, Sec. 10 of the Texas Constitution, and by Art. 32A.02, V.A.C.C.P.; that the State failed to provide appellants with a speedy trial in compliance with the trial priorities prescribed by Art. 32A.01; that the trial court erred in admitting certain evidence which was irrelevant, collateral to, and wholly disassociated with the offense charged; that the trial court erred in admitting hearsay evidence; that the trial court erred in denying appellants the right to cross-examine the complaining witness; that the trial court erred in admitting a photograph into evidence because it was not identified, it was not relevant or material to any of the issues on trial, and it was offered solely to inflame the minds of the jury; and that the trial court erred in allowing the prosecutor to argue outside the record during his closing argument.

Charlie Sebesta, an acquaintance of the appellants, testified that both appellants arrived at his residence at approximately 7:30 p.m. on October 12, 1979, stayed for about an hour, and left. According to Sebesta, the appellants returned at approximately 10:00 or 10:30 p.m. that same evening, and during the course of that second visit Phillips confronted Sebesta with a steak knife and demanded the $800 or $900 Phillips said Sebesta owed him. Hinkle, acting in concert with Phillips, proceeded to search the residence, taking care to wipe off fingerprints on items he touched with a dish cloth. Sebesta further related that he was threatened by the appellants not to call the police. When the appellants left the apartment, Sebesta called the police. A description of the appellants and their names were given to the police, and the appellants were arrested on October 13, 1979.

Over defense counsel's objection Sebesta was allowed to testify that on the following day, October 14, 1979, he returned to his home and found that his door had been spray-painted red and that a can of insect repellant had been left on his porch. The printed words "kills," and "dead," and "children" on the can had been circled and arrows had been drawn to connect the words. The State was allowed to introduce exhibits Nos. 7 and 8, photographs of the spray-painted door, and No. 9, the can of insect repellent, over the appellant's objections. Sebesta, and later state's witness Officer Richard Armstrong, were allowed to testify that on that same afternoon Sebesta received a telephone call from an unidentified female who threatened him in connection with the charges he had filed. The appellants argue that the introduction of this extraneous matter and the accompanying exhibits was error. We agree and reverse and remand.

Before the extraneous matters were established before the jury, the prosecutor, defense attorney, and trial judge discussed the issue at length. The state, arguing for admission, made the following statement:

> THE STATE: The Defense has indicated all through the course of the proceedings that their contention is that there was not a robbery and that the State's witnesses are lying. Mr. Sebesta will testify that whenever he returned to his apartment the following morning that there was sprayed on his door casing red paint, which we have a photograph of, and there was beside his door a can, empty can, of Raid bug spray in which there had been certain lines drawn and things encircled so that it would say, "Raid kills children." Furthermore, that same day he received a threatening phone call from a female asking whether or not he had gotten the message telling him that he had better go down and drop the charges. This would show—
>
> . . . .

1. Leslie Wayne Phillips and Fred Allen Hinkle were charged in separate indictments with the aggravated robbery of Charlie Sebesta. The indictments were consolidated in one trial.

THE STATE: This would tend to show that this is not a fabricated thing, that there was, in fact, a robbery which the Defendants are alleging never took place. Your Honor, for that reason we feel it's admissible.

Defense counsel voiced strenuous objections to the court's ruling that the evidence was admissible, arguing that the State's only purpose for offering the evidence was to prejudice the appellants. Defense counsel also objected on the grounds that the extraneous matters were not shown to be relevant to the charge of aggravated robbery, that the State was attempting to try the appellants on an accusation of harassment which was not in the indictment, and that the state was therefore attempting to try the appellants as criminals in general.

The State asserts in its brief on appeal only that it "will not engage in 'audacious advocacy' by quoting cases out of context" and that "it was the prosecutor's intent to show the totality of the circumstances, and by doing so, to show the culpability of the Appellant." No cases are cited in support of the State's assertion. That section of the brief ends: "Appellee would urge the Court to reconsider the line of cases cited by Appellant and give latitude to the State in the protection of victims."

■ It is an established rule of evidence that proof of extraneous transactions committed by a party is inadmissible except for certain specified exceptions. See *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App. 1972). For example, such evidence may be admissible to refute a defensive theory raised; however, it will be admitted only if it is shown to be material and relevant to a contested issue and if its relevance to the issue is not outweighed by its prejudicial effect. *Gipson v. State,* 619 S.W.2d 169 (Tex.Cr.App.1981). Even though an extraneous offense may come within an exception to the general rule of exclusion, it may not be received into evidence unless and until there is a clear showing that the evidence is material, *that the accused participated in the extraneous transaction being offered into evidence,*[2] and that its relevancy to a material issue outweighs its inflammatory or prejudicial potential. *McCann v. State,* 606 S.W.2d 897 (Tex.Cr.App.1980).

■ In *Albrecht v. State,* supra, it was held that a relationship between evidence of the extraneous transaction and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown. There has been no such showing in the instant case. In *Tomlinson v. State,* 422 S.W.2d 474 (Tex.Cr.App.1968), and again in *Thompson v. State,* 615 S.W.2d 760 (Tex.Cr.App.1981), the rule was explained clearly: even though evidence of an extraneous offense may be relevant to the instant proceeding, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to be the perpetrator.

In the instant case the State has failed to establish that either of the appellants was the perpetrator of the extraneous transaction. The State's attempt to connect the appellants with the threats are not sufficient to show either one to be even a party to the threats. The prosecutor's insinuation to the jury during closing argument that fingerprints found on the can of insect spray may have been that of appellant Hinkle's girlfriend[3] further prejudiced the appellants' trial.

Reversible error was thus committed when the trial court permitted the State to introduce evidence of that extraneous matter in the trial of the instant offense. Any probative value of the evidence was far outweighed by the extreme prejudicial effect of the evidence.

· We have considered the appellants' grounds of error regarding the Speedy Trial Act because a violation of the Act would be a total bar to further prosecution of the instant causes.

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. Absolutely no proof of fingerprint identification was offered.

The appellants contend that the delay between indictment and trial of their cases worked to deprive them of their constitutional right to a speedy trial and their state statutory right to prompt and speedy disposition of charges pending. Specifically, the appellants allege that the announcement of ready by the State was a "mere subterfuge," and that the State manipulated the docket and/or trial of cases in which priority should not have been granted in order to camouflage its unreadiness to try the appellants' cases.

It is undisputed that the appellants were arrested on October 13, 1979 for the offense with which they were indicted and that they were still in custody at the time the motions to dismiss were heard and denied on February 28, 1980. It is likewise undisputed that the appellants' cases were first set for trial the week of January 7, 1980, and that they were next set for trial the week of February 11, 1980. At both of these times the State announced ready for trial. The appellants' cases were not reached for trial at either time, but instead went to trial on April 16, 1980.

A timely announcement of "ready" is a prima facie showing that the State is ready for trial, and upon such declaration the burden shifts to the defense to show otherwise. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979). In the instant case the prosecuting attorney at the hearing on the appellants' motions to dismiss testified that he was ready to try the cases then and had been ready to try the cases ever since the first setting on January 7, 1980. Although the appellants have painstakingly set out those cases on the docket later in numerical sequence filing numbers than the instant case which were tried sooner than the instant case, there is no indication in the record that the State requested delayed trial settings. There is no requirement in the Speedy Trial Act that the State actually attempt to set a case for trial within the 120 day statutory limit. The appellants have produced no evidence to demonstrate the State's lack of readiness after the first announcement was due to any reason other than the court's complicated trial docket. There is similarly no showing by the appellants that the State attempted to avoid bringing them to trial. In addition we note that during the hearing on the defendant's motion to dismiss, the chief assistant prosecutor Jack Brock testified that on February 11 he had a conversation with defense counsel during which they agreed to set the cases for the following week. The instant cases were then put on a docket with the remaining jail cases; older jail cases were tried before them, but they did come to trial in that order of cases.

With regard to the delay between the first announcement of ready on January 4 and the second setting of February 11, prosecutor Brock testified that at least one case cited by appellant as having been tried out of numerical order was a re-indictment, and that earlier indictment had a lower cause number than the instant cases. Considerable testimony from Prosecutor Brock and District Attorney James Hury indicate that, although several jury trials were had of cases appearing later on the docket, the State was ready to proceed to trial on the instant cases. The ensuing delays, although best described as resulting from somewhat confused docketing procedures on the part of the trial court, do not merit labels such as "camouflage" or "subterfuge." The Speedy Trial Act is directed at prosecutorial delay only. Delays due to the state of the court's docket only, and not attributable to the State, will not justify dismissal. *Barfield v. State,* supra. Without any further showing of prosecutorial activity in the selection of cases to be tried and in the delay of the instant cases, we must find that the requirements of the Speedy Trial Act were not violated by the State.

For the reasons stated above, the judgments of conviction are reversed and the causes are remanded to the trial court for a new trial.