**Randall Wayne HAFDAHL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69646.**

Court of Criminal Appeals of Texas, En Banc.

June 13, 1990.

Rehearing Overruled Dec. 19, 1990.

OPINION

McCORMICK, Presiding Judge.

Appellant, Randall Wayne Hafdahl, appeals from his conviction for capital murder where the death penalty was assessed as punishment. On direct appeal to this Court appellant raises six points of error. We find all points to be without merit and affirm the conviction.

A review of the facts pertaining to the investigation of an alleged kidnapping by appellant in Dallas County is necessary to appellant's first three points of error. Appellant was charged with the capital offense of killing a police officer. Evidence at trial indicated that appellant shot and killed the police officer as the officer investigated an automobile accident in which appellant had been involved. Appellant took the stand on his own behalf. He testified he shot the officer but he did not recognize that he was an officer until after he had fired. Appellant testified he believed the officer to have been an angry driver that had also been in the accident:

"All I seen was a gun and hand. That's all I had seen. It scared me. I just had the wreck. I was pretty messed up. I had been drinking ... and we had taken some mushrooms.... I just thought that I had run someone off the road, and they was going to kill me."

Appellant substantiated his defense with the testimony of Daniel Halgren. Halgren testified that he was also in the car that appellant drove on the night of the killing. Further, he testified that he did not hear the officer identify himself as such before appellant shot him.

In addition to his direct testimony, Halgren upon cross-examination testified that appellant had dyed his hair and had used a false name because he had been in trouble in Dallas and did not want to be identified:

"Q. [By State's Attorney] Do you recall [appellant] making the statement to you about some problems he had in Dallas.

"A. Yes.

\*     \*     \*     \*     \*     \*

Mallory G. Holloway, Amarillo, for appellant.

Randall Sherrod, Dist. Atty. and John L. Davis, Asst. Dist. Atty., Canyon, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

"Q. Did he indicate to you that he had jumped a $10,000 bond that he made in Dallas, and that was the reason he used a false name, and false identification?

"A. He said something like that."

After appellant presented his defensive testimony and over his objection, the State introduced the testimony of a police officer from Rockwall, Texas. The officer testified that he arrested appellant in 1982 for the offense of aggravated kidnapping based on a warrant originating from Grand Prairie. Thereafter, authorities transferred appellant to Grand Prairie and released him without bond pending an investigation by the Federal Bureau of Investigation. A police officer from Grand Prairie testified that Dallas County officials closed their case against appellant after turning their evidence over to federal authorities. He did not know what occurred after the FBI received the case but related that the State could re-initiate kidnapping charges at any time.

▮ In his second point of error, appellant insists this testimony demonstrates State authorities had merely investigated—as opposed to prosecuted—him for the offense of aggravated sexual assault and therefore it should not have been introduced into evidence before the jury. That is, appellant asserts that evidence of the kidnapping should not have been admitted before the jury because it was never shown that he actually committed the offense. Appellant has misconstrued the purpose of the State's evidence.

The evidence of appellant's arrest for aggravated kidnapping was introduced to show the motive appellant would have to shoot at the officer. Because appellant wanted to avoid apprehension by State au-

thorities, which could produce a subsequent investigation and/or prosecution of the aggravating kidnapping charges, he would more likely than not shoot at the officer knowing him to be an officer. See *Porter v. State*, 623 S.W.2d 374, 385–86 (Tex.Cr. App.1981) cert. denied, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982); *Barefoot v. State*, 596 S.W.2d 875, 878 (Tex.Cr.App. 1980) cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). The existence of a *potential* for further investigation, along with the *potential* that federal or State aggravated kidnapping charges could occur, is the reason the evidence was introduced. The important factor is appellant's awareness of this potential along with his fear of apprehension. The State proved his awareness and fear through Daniel Halgren who specifically testified that appellant was in fear of prosecution for his actions in Dallas.[1]

The case before us is similar to *Barefoot v. State*. In *Barefoot*, the defendant was also charged with the murder of a police officer. The State introduced testimony that the officer had stopped the defendant to question him about an arson case. It was shown that appellant had been arrested and charged with the offense of kidnapping a minor and that he had escaped from a New Mexico jail while these charges were pending. It was never shown that the defendant actually committed these offenses just that he was wanted by New Mexico authorities for them. This Court determined that the trial court did not abuse its discretion when it allowed the introduction of these offenses. This Court wrote:

"Appellant argues that is was unnecessary to admit the New Mexico offenses because there was other evidence of motive, including the apparent arson at the

---

1. It is unclear whether Halgren's reference to appellant being in Dallas is a mistake. There is no indication that when authorities in Dallas released appellant from custody he was placed on a bond. The State in its case in chief had introduced testimony that appellant had violated the terms of his probation that he had received in Fort Worth for delivery of a controlled substance. The State had issued a warrant on the probation violation. It may be that Halgren's reference to Dallas should have been to

Fort Worth or some other place in Texas. (Contained in the record on appeal is a "rap sheet" listing crimes throughout north Texas for which State and federal authorities had investigated appellant. The list is extremely extensive and includes investigations for such offense ranging from possession of drugs to murder.) However, from the record that is before us, we cannot say that the trial court abused its discretion in allowing the jury to hear the aggrieved testimony since appellant did not clarify any discrepancy.

Silver Spur and statements appellant had made to friends threatening to kill a Harker Heights Policeman. That appellant may have had other motives for killing [the complainant] does not mean that he was not motivated by a desire to avoid his return to New Mexico." 596 S.W.2d at 875.

We hold that the trial court did not abuse its discretion in allowing the jury to hear that appellant was investigated for aggravated kidnapping in Dallas. Appellant's second point of error is overruled.

■ In his first point of error, appellant alleges that the State suppressed exculpatory evidence. His specific complaint is that the State failed to inform him that kidnapping charges had not been further investigated and prosecuted by the Federal Bureau of Investigation.[2] Appellant claims that this was exculpatory information which should have been provided to him for his defense. He relies upon, among other cases, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ The State counters, arguing that testimony concerning the FBI's inactivity is not exculpatory because it is not contrary to why the testimony was introduced, to wit, the testimony demonstrated that appellant fired at the officer because he thought the officer would learn of the investigation after his arrest for the traffic offense and that further action may result in prosecution for the offense. Therefore, the FBI's failure to bring formal charges is not *Brady* material and consequently the State was under no obligation to release such information to appellant even if the State possessed such information or knew of its

existence.[3] We agree with the State's arguments.

■ As discussed above, appellant's arrest for kidnapping was introduced not for the purpose of showing that he was guilty of the crime but because he thought authorities were pursuing him, making the fact that appellant knew he was firing at an officer more likely than not. The FBI's inactivity might be exculpatory if all charges against appellant had been dropped *and* appellant was aware that the federal authorities were no longer pursuing him for the offense. However, there is no indication that appellant was unaware of the FBI's failure to investigate further. Moreover, there is testimony that formal charges could be reinstated at any time. The State is required to disclose to defendants all favorable evidence that is material either to guilt or punishment and suppression of such favorable, material evidence denies a defendant's constitutional right to due process but the Court's holding in *Brady* "requires disclosure only of evidence that is both favorable to the accused" and " '*material* either to guilt or to punishment.' " *United States v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985) quoting *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197 (emphasis added). The Supreme Court explained in *Agurs* that "[a] fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2398. The FBI's failure to continue its investigation, however, is not exculpatory information in that it is not material to any defense presented by appellant; therefore, the State was under no obligation to turn this information over to

---

**2.** For this point of error we will assume that federal authorities took no further action after the State turned its information concerning the kidnapping over to them. We must assume this since the only proof contained in the record on appeal concerning the FBI's inactivity came by way of a "bill of exceptions" filed by appellant after his motion for new trial was overruled by operation of law. That "bill" is not properly before this Court. See *Brooks v. State*, 473 S.W.2d 30, 30–31 (Tex.Cr.App.1971).

**3.** *Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist. See *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Cr.App.1981); *Ransonette v. State*, 550 S.W.2d 36, 39 (Tex.Cr.App.1977). But see *United States v. Bagley*, 473 U.S. 667, 671, n. 4, 105 S.Ct. 3375, 3378, n. 4, 87 L.Ed.2d 481 (1985).

him. See *Robinson v. State,* 701 S.W.2d 895, 900 (Tex.Cr.App.1985). Cf., *Ex parte Adams,* 768 S.W.2d 281 (Tex.Cr.App.1989). Accordingly, appellant's second point of error is overruled.

■ In his third point of error, appellant complains that the trial court should have at least entertained his motion for new trial and, as such, should have held a hearing thereon. We disagree.

Appellant's motion for new trial alleged in pertinent part that "[t]he trial court erred in admitting evidence of an alleged aggravated kidnapping during the guilt-innocence phase of the trial in order to prove motive." Neither in the motion nor in an affidavit attached thereto did appellant offer additional reasons for the trial court to conduct another hearing on what he had already unsuccessfully asserted to be error in the original trial. No hearing was held upon the motion and it was overruled by operation of law. *After* the motion had been overruled, appellant filed a "bill of exceptions"[4] in which he alleged the State had withheld information that the aggravated kidnapping case had been transferred to federal authorities and those authorities had not conducted further investigations or sought prosecution thereon. In his brief before this Court, appellant asserts that at least the trial court should have held a hearing on his motion for new trial. Again, we must disagree with appellant.

■ Assuming without deciding that appellant properly brought the motion to the trial court's attention, we cannot say that he was entitled to a hearing on a motion that presented the trial court with the exact same arguments made at trial. See *Cannon v. State,* 691 S.W.2d 664, 679 (Tex.

Cr.App.1985) cert. denied 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). This is not a case where a defendant has alleged in his motion for new trial sufficient facts, *dehors the record,* which if true would entitle him to a new trial. See, e.g., *Green v. State,* 754 S.W.2d 687, 688 (Tex.Cr.App. 1988) (defendant alleged juror misconduct in his motion for new trial and supported allegation by affidavit); *McIntire v. State,* 698 S.W.2d 652, 661–662 (Tex.Cr.App.1985) (per curiam opinion on rehearing) (same). The "bill" that was filed after the motion for new trial had been overruled by operation of law presented a completely new ground for new trial; as such, it was untimely presented and the trial court had no authority to hold a hearing thereon. *Gutierrez v. State,* 764 S.W.2d 796, 801 (Tex. Cr.App.1989); *Jones v. State,* 501 S.W.2d 677, 679 (Tex.Cr.App.1973).[5] Consequently, appellant's third point of error is overruled.

■ In point of error number four, appellant argues the trial court erred in denying his motion for an instructed verdict of not guilty because the State failed to prove that the deceased officer was in the lawful discharge of an official duty as required by statute. Appellant presented defensive evidence after the State rested its case in chief, in so doing he waived his right to complain that the trial court erred in overruling his motion for instructed verdict. *Kuykendall v. State,* 609 S.W.2d 791, 794 (Tex.Cr.App.1981) (holding that by putting on evidence the defendant waives his contention that the trial court erred in denying a motion for an instructed verdict); *Shirley v. State,* 501 S.W.2d 635, 637 (Tex.Cr.App. 1973) (same). Accordingly, appellant's

---

4. Appellant filed among the court's papers a "Bill of Exceptions" to the trial court's refusal to conduct a hearing on the motion for new trial. In this bill appellant alleges that if a hearing had been conducted on the motion the following would have been adduced:

"The alleged aggravated kidnapping introduced by the State during the guilt-innocence phase of the trial was refused by the Dallas County District Attorney's office as well as the Dallas United States Attorney's office for prosecution."

5. Both *Gutierrez* and *Jones* were decided under Article 40.05(d), V.A.C.C.P. (repealed and replaced by Tex.R.App.P. 31) which was in effect at the time of appellant's trial. The Article provided that an original or amended motion for new trial had to be presented to the trial court within ten days after its filing. The Article gave the trial court the authority to extend the ten day time limit but not beyond seventy-five days. See generally *Green v. State,* 754 S.W.2d 687, 691 (Tex.Cr.App.1988) (Onion, P.J., dissenting).

fourth point of error is without merit and is overruled.

█ In point of error number five, appellant argues in the alternative that all the evidence presented at trial fails to prove beyond a reasonable doubt the deceased officer was in the lawful discharge of an official duty. In reviewing the sufficiency of the evidence to support a conviction in either a direct or circumstantial evidence case, the evidence is reviewed in the light most favorable to the jury's verdict to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 721 S.W.2d 295, 300 (Tex.Cr.App. 1986). The indictment in this case alleged the official duty in which the officer was engaged was that of "investigating a traffic accident." At trial it was unrefuted that the deceased officer was returning home after his shift for that day had ended. Appellant, driving recklessly, cut in front of the officer and lost control of his car. Appellant's car crossed a median and an access road; eventually the car struck and toppled part of a fence. Several witnesses at trial, including appellant, testified that the officer arrived on the accident scene soon thereafter. Viewing the disputed evidence in the light most favorable to the verdict, the officer yelled at appellant that he was an officer and ordered appellant to stop. At which time, appellant, who was attempting to flee from the accident site, turned and shot the officer.

The chief of the Amarillo Police Department testified that departmental policies require off duty officers witnessing accidents to stop and render any necessary aid or assistance. Further, departmental policy required that if the investigating officer observes a person fleeing from the accident sight the officer is required to apprehend that person for further investigation.

█ We find that *Selvage v. State,* 680 S.W.2d 17 (Tex.Cr.App.1984), controls disposition of appellant's point of error. In *Selvage,* we held that an officer who entered a jewelry store to attend to a personal matter was in the lawful discharge of an official duty when, after the proprietor informed the officer that he was fearful of the defendant, the officer approached the defendant and escorted him to a counter in the store. Thereafter the defendant shot the uniformed officer. This Court held:

"While it is true that [the police officer] initially entered the [the jewelry store] for personal business, when the [proprietor] expressed his anxiety about appellant ... [the officer] assumed the role of a peace officer when he removed his coat to identify himself as a Deputy Sheriff and approached appellant in an attempt to deter him from wrongdoing.

"The evidence is sufficient to lead a reasonable jury to conclude that [the police officer] was in the lawful discharge of an official duty." 680 S.W.2d at 21.

So too in the case before us, when the police officer stopped at the scene of the accident and approached appellant shouting "halt, halt, stop, police," the officer was no longer off duty. He was investigating a traffic accident as required by his job as an Amarillo police officer. Any rational trier of fact could have found that the deceased, at the time of his death, was acting in the lawful discharge of an official duty as alleged in the indictment. *Selvage,* 680 S.W.2d at 21. See also *Moreno,* 721 S.W.2d at 301; *Nethery v. State,* 692 S.W.2d 686, 698 (Tex.Cr.App.1985) cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).[6]

---

**6.** Under this same point of error, appellant also argues that the officer exceeded his authority in that the officer had no right to "draw down" on him and therefore the officer was not in the "lawful" discharge of an official duty as required by statute to constitute capital murder. See V.T.C.A., Penal Code, Section 19.03(a)(1). Whether the deceased had a right to draw his gun in an attempt to stop appellant from fleeing the accident scene is irrelevant to whether the officer was in the lawful discharge of his official duty of investigating a traffic accident. *Montoya v. State,* 744 S.W.2d 15, 30 (Tex.Cr.App.1987) cert. denied, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988) (holding that in a prosecution for capital murder, evidence that although the police officer was making an unauthorized warrantless arrest the officer was in the lawful

In his sixth point of error, appellant contends the trial court abused its discretion when it refused to admit into evidence an exculpatory statement appellant gave to officers investigating the shooting. Appellant told the investigators he did not see a police car after the accident and that he did not know that the deceased was an officer until after he had shot him. This out-of-court statement is self serving and is therefore hearsay. *Womble v. State,* 618 S.W.2d 59, 62 (Tex. Cr.App.1981). The trial court properly excluded it from evidence.

Having found no reversible error, the judgment and sentence of the trial court are affirmed.[7]

CLINTON and BERCHELMANN, JJ., concur in the result.

TEAGUE, Judge, dissenting.

For the following reasons, I respectfully dissent to the majority opinion's failure to reverse the trial court's judgment of conviction and sentence of death.

I would sustain appellant's second point of error, that "the trial court erred in admitting into evidence the extraneous offense of aggravated kidnapping to show appellant's motive to avoid apprehension by police." I would further find that the error was not harmless beyond a reasonable doubt. Therefore, I would reverse the trial court's judgment of conviction and sentence of death.

The record reflects that the jury convicted Randall Wayne Hafdahl, aka Jack Douglas Cone, aka Robert Eugene Moore, aka Blue Eyes, henceforth appellant, of committing the murder of James Delbert Mitchell, Jr., an Amarillo police officer, while Mitchell was acting in the lawful discharge of an official duty, namely, investigating a traffic accident. The "acting in

the lawful discharge of an official duty" causes the offense of murder of a peace officer to be elevated to the offense of capital murder of a peace officer. See V.T. C.A., Penal Code, § 19.03(a)(1), which provides that a person commits the offense of capital murder of a peace officer if, knowing that the person is a peace officer, he intentionally murders the peace officer *and* the peace officer is then acting in the lawful discharge of an official duty.

After the jury answered in the affirmative all three of the special issues that it was requested to answer, see Art. 37.071, V.A.C.C.P., the trial judge, as he must do under Art. 37.071(e), V.A.C.C.P., sentenced appellant to a premature death.

Appellant asserts in his second point of error that the trial judge erred in allowing the jury to hear, over objection, evidence that went to an unadjudicated, unindicted extraneous offense of aggravated kidnapping that appellant allegedly committed over three years before he allegedly committed the capital murder of Officer Mitchell. The extraneous offense was admitted to show both appellant's "motive" and "intent" when he shot Officer Mitchell.

The general rule in Texas is that extraneous offense evidence or testimony, that relates either to adjudicated or unadjudicated extraneous offenses, may not be admitted into evidence against the accused. This is because the "introduction of [an] 'extraneous offense' transaction is inherently prejudicial, since the accused has no notice he will be called upon to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State." *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983). Thus, an accused should never be tried for some collateral and extraneous offense, or for being a

discharge of an official duty). See also *Salazar v. State,* 643 S.W.2d 953, 956 (Tex.Cr.App.1983). Moreover, given the facts of this case where the officer observed several people, including appellant who is a large man, attempting to escape from the accident site, we cannot say that the officer is without authority to draw his revolver to protect himself.

7. Appellant has filed a pro se brief alleging several additional points of error. Although appellant is not entitled to dual representation on appeal, *Rudd v. State,* 616 S.W.2d 623, 625 (Tex.Cr.App.1981), we have reviewed the brief and find the points of error contained therein to be without merit.

criminal generally, and extraneous offense testimony or evidence should never be admitted into evidence against the accused unless some exception to the general rule of inadmissibility is first established by the State. See *Plante v. State*, 692 S.W.2d 487, 494 (Tex.Cr.App.1985); *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App. 1983); *Bates v. State*, 643 S.W.2d 939, 944 (Tex.Cr.App.1982); and *Rubio v. State*, 607 S.W.2d 498, 499 (Tex.Cr.App.1980). Also see Rule 404(b), *Texas Rules of Criminal Evidence*, that is not applicable to this cause because it was not in effect when appellant's trial occurred.

When appellant's trial occurred, this Court's general three (3) part test for trial courts to use in making the determination whether an extraneous offense may be admitted into evidence against an accused during his trial was then in effect. It provided that before such became admissible evidence, (1) the State must establish by clear and convincing evidence that the accused committed or was a participant in the extraneous offense, see, for example, *Wallace v. State*, 679 S.W.2d 1, 5 (Tex.Cr. App.1983), and *McKay v. State*, 707 S.W.2d 23, 31 (Tex.Cr.App.1985); (2) the extraneous offense is relevant to a material issue in the case; and (3) the probative value of the extraneous offense outweighs its presumptively inflammatory or prejudicial potential, see, for example, *Soffar v. State*, 742 S.W.2d 371, 377 (Tex.Cr.App.1987), and *Williams v. State*, supra, at 346.

The record reflects that during the guilt stage of appellant's trial, when the prosecutors were putting on their case in chief against appellant, the trial judge was informed by the prosecutors that they intended to introduce evidence that would show appellant's "intent" and "motive" for shooting Officer Mitchell. This evidence consisted of one unadjudicated, unindicted extraneous offense of aggravating kidnapping and one extraneous felony conviction for delivery of a controlled substance. Evidence going to the latter showed that appellant had been placed on probation, and thereafter, pursuant to the State's motion to revoke appellant's probation, a capias for appellant's arrest issued. Appellant does not complain on appeal about the admissibility of this evidence. Therefore, I will not discuss why that evidence was admissible on the issue of appellant's "motive" or "intent" to shoot Officer Mitchell.

The trial judge conducted a hearing outside the jury's presence in order to make the determination whether the State's proffered evidence was admissible, after which he, the trial judge, overruled appellant's objections and ruled that the State would be permitted to present to the jury evidence going to both the unadjudicated and unindicted extraneous offense of aggravated kidnapping and the adjudicated offense of delivery of a controlled substance, to show appellant's "intent" and "motive" for shooting Officer Mitchell.[1]

After carefully searching the record for evidence that might satisfy the first part of the above three part test, that appellant either committed or participated in the commission of the extraneous offense of aggravated kidnapping, and finding only evidence going to the fact that appellant was

---

1. As explained in *Black's Law Dictionary* (1968 edition), at page 727, "Intent and motive should not be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted." The defendant's "intent" is always an issue in a capital murder case. However, the defendant's "motive" for committing the crime, though it may be relevant, is never essential to the State's case against the accused. It may, however, be used to establish the defendant's "intent" when he allegedly committed the crime which he has been accused of committing. Also see the concurring opinion that Judge Phillips filed in *Loudres v. State*, 614 S.W.2d 407, 411–412 (Tex.Cr.App.1981). In *Wallace v. State*, 679 S.W.2d 1, 4 (Tex.Cr.App.1983) (On State's Motion for Rehearing), this Court, speaking through Judge Clinton, pointed out the following: "In *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex.Cr.App.1972), it was observed that '... motive refers to an emotion that would provoke or lead to the commission of a criminal offense. Evidence to show motive is the circumstantial evidence that would appear to cause or produce the emotion. When it is said that evidence going to show motive is admissible, it is meant that the circumstantial evidence is admissible that would appear to cause or produce the emotion that would in turn provoke or incite the commission of the criminal offense. [citations omitted].'"

charged with such offense, I must find that the trial judge clearly erred in admitting into evidence testimony that went to the extraneous offense of aggravated kidnapping. Also see *Wallace*, supra; *Mc Kay*, supra; *Tippins v. State*, 530 S.W.2d 110, 111 (Tex.Cr.App.1975); *Phillips v. State*, 659 S.W.2d 415, 418 (Tex.Cr.App.1983); *Bush v. State*, 628 S.W.2d 441, 444 (Tex.Cr. App.1982); *Landers v. State*, 519 S.W.2d 115 (Tex.Cr.App.1975); *Fentis v. State*, 528 S.W.2d 590, 592 (Tex.Cr.App.1975); *Tippins v. State*, 530 S.W.2d 110, 111 (Tex.Cr. App.1975); *Thompson v. State*, 615 S.W.2d 760, 761 (Tex.Cr.App.1981); 3 *Texas Criminal Practice Guide* § 7.05[8][a], at pp. 73–62.2(8) and (9).

In *Fentis*, supra, this Court stated the following:

. It is elementary that an accused's connection with an extraneous offense must be shown with some degree of certainty before evidence of that offense can come in, assuming it is relevant. [Citations omitted.]
The harmfulness of this error [in admitting extraneous offense testimony that showed that the the defendant had been charged with killing a peace officer, without connecting the defendant to the extraneous offense] needs little discussion. Appellant was on trial for assaulting a peace officer with intent to kill ... The prejudice thus planted in the minds of the jurors can hardly be doubted.

In this cause, at the hearing held outside the jury's presence, regarding the aggravated kidnapping offense, the prosecution proved that appellant had been arrested in Rockwall on September 4, 1982, pursuant to an arrest warrant that issued out of Grand Prairie for allegedly committing the offenses of aggravated kidnapping and auto theft in Grand Prairie while using the name of Robert Eugene Moore. The prosecution also proved that appellant was transferred from Rockwall to Grand Prairie on September 7, 1982, after which, because the case was "referred to the FBI", appellant was "released pending the outcome of the investigation by the federal authorities." The prosecution also showed

through hearsay that the complainant in the aggravated kidnapping case was unable to attend court "because of health reasons ... pregnant with twins ..." No attempt was made by the State, however, to continue this cause until the complainant was able to attend court. The evidence also established that "the FBI" never filed any kind of criminal charges against appellant; in fact, from this record, it does not appear that "the FBI" or the State of Texas ever took any further action on the two cases. Appellant's objections to the trial judge admitting into evidence the fact that appellant had been charged with committing the aggravated kidnapping offense were overruled by the trial judge, and the jury was permitted to hear testimony that was almost the same as that adduced at the out-of-the-jury's presence hearing regarding the aggravated kidnapping offense, except I do not find where the jury was made aware of the auto theft charge. The date of the alleged aggravated kidnapping offense was August 20, 1982, which was over three years before the offense at bar was allegedly committed on November 11, 1985.

Given the above, I find and hold that the trial judge clearly erred in admitting into evidence before the jury testimony about the unadjudicated and unindicted extraneous criminal offense of aggravated kidnapping—because the State failed to prove that appellant either committed or participated in the commission of that offense. Appellant's second point of error should be sustained, and this Court should next decide whether the trial court's error in admitting into evidence over objection the extraneous offense testimony concerning the aggravated kidnapping offense was harmless beyond a reasonable doubt under Rule 81(b)(2), *Texas Rules of Appellate Procedure*, which provides: "Criminal cases. If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error *made no contribution* to the conviction or to the punishment." (Emphasis supplied.) Under Rule 81(b)(2), supra, before this Court can label the patent evi-

dentiary error that occurred at the guilt stage of appellant's trial "harmless", the State must demonstrate to this Court, with sufficient clarity, in the context of the case, why this Court can state, beyond a reasonable doubt, that the error *made no contribution* to the conviction of the defendant.

I find that in the context of the case, the potential for prejudice stemming from admitting an extraneous crime of violence, such as aggravated kidnapping, when introduced during a capital murder trial for murdering a peace officer, when the peace officer was acting in the lawful discharge of his duties as a peace officer, elevates to the point of vibrant kinetic energy when the evidence of the extraneous offense presented amounts only to a mere accusation, and no evidence is presented that might reflect or indicate that the defendant either committed or participated in the commission of the offense.

In this instance, I cannot state, beyond a reasonable doubt, that there is not a reasonable possibility that the error in admitting into evidence the testimony about the extraneous offense of aggravated kidnapping *made no contribution* to the jury's decision to find appellant guilty of the alleged offense of capital murder of Officer Mitchell. First, the charged offense was capital murder, and thus the jury was very likely to be swayed by evidence tending to show appellant's character as violent. I find that this kind of evidence reflects very prejudicially on the character of the accused for violence. Secondly, although the subject of pretrial publicity is not before this Court, it cannot be ignored that there was a great deal of adverse, pretrial publicity about the murder of Officer Mitchell. Finally, the testimony relating to the aggravated kidnapping cause was re-presented at the punishment stage of the trial. Also see *Turner v. State*, 754 S.W.2d 668 (Tex.Cr.App.1988). In such circumstances, I find that there is too much of the reasonable possibility in the harm analysis under Rule 81(b), and not enough "no" in any harm analysis, to hold that the error was harmless beyond a reasonable doubt.

The judgment of conviction and sentence of death of the trial court should be reversed.

MILLER, J., joins.