**AFFIRM; and Opinion Filed July 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00608-CR

**PHILLIP RAMIREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1042390-W**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Brown

Appellant Phillip Ramirez appeals his conviction for possession with intent to deliver methamphetamine in an amount of 400 grams or more. A jury found appellant guilty, and the trial court assessed punishment at fifteen years' confinement. In four issues on appeal, appellant contends 1) the trial court erred in denying his motion to suppress evidence seized in a search of his apartment; 2) his due process rights were violated when the State knowingly used perjured testimony; 3) the trial court erred in denying his motion to require the State to produce the file of its confidential informant; and 4) the trial court erred in not allowing him to present evidence that a member of the law enforcement search team was later convicted of theft of property from crime scenes. For reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

Appellant was indicted for the offense of possession with intent to deliver methamphetamine in an amount of 400 grams or more. Appellant pleaded not guilty and elected to have a jury trial. Prior to trial, appellant moved to suppress evidence seized as a result of a search of his apartment on grounds that the search warrant failed to establish the existence of probable cause. The trial court denied the motion to suppress.

At trial, the evidence showed that the Mesquite Police Department used a confidential informant to purchase methamphetamine at 1531 Duncanville Road, apartment number 437. Within seventy-two hours of that purchase, police obtained a search warrant for the location and executed it, using a ram to knock in the door. Police found appellant and a woman in the living room. In the kitchen, police found two digital scales and two bags of methamphetamine, which weighed about 192 grams. Police also found 844 grams of methamphetamine and $1,136 in cash in the bedroom closet. The methamphetamine had a street value of $100 per gram. A copy of the lease agreement and a utility bill showed appellant lived at the apartment. After the jury found appellant guilty, the State and the defense agreed that appellant should receive the minimum sentence of fifteen years. Accordingly, the trial court assessed punishment at fifteen years' confinement. This appeal followed.

## MOTION TO SUPPRESS

In his first point of error, appellant contends the trial court erred in denying his motion to suppress the evidence seized during the search of his apartment. Specifically, he argues here, as he did in the trial court, that the affidavit in support of the search warrant did not provide probable cause because it was based entirely on the activities of an unnamed confidential informant and did not establish the informant's credibility or reliability. The State responds that

the affidavit provided probable cause because it detailed a controlled buy. We agree with the State.

We generally review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations. The court is constrained to the four corners of the affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). When we review a magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.*

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *Id.; see* TEX. CODE CRIM. PROC. ANN. art. 18.01 (West Supp. 2013). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *McLain*, 337 S.W.3d at 268. This is a flexible and non-demanding standard. *Id.* The facts stated in the supporting affidavit must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified. *Id.*

At the hearing on appellant's motion to suppress, Mesquite Police Sergeant Chad Copeland testified that he signed the affidavit supporting issuance of the warrant for the property. Copeland's affidavit provided:

> During the last 72 hours, your Affiant had Confidential Informant (#10-009), whose name shall remain nameless for security reasons, go to the location

–3–

described in item 1 [apartment 437 at 1531 Duncanville Road in Mesquite] of the above to purchase methamphetamine.

Prior to going to the place and premises described in item 1 of the above, the confidential informant was searched and found to be free of any type of contraband or controlled substance. Your Affiant and investigators observed the informant go to and enter the place and premises described in item 1 of the above. A short period later, the confidential informant exited the place and premises described in item 1 of the above and presented a usable quantity of methamphetamine that was purchased from the individual described in item 3 [a white male known only as "Phillip"] of the above at the place and premises described in item 1 of the above. The informant was then searched again and was not in possession of any other contraband or controlled substance. The confidential informant advised your Affiant and investigators he observed more methamphetamine inside the place and premises described in item 1 of the above.

Due to the above information, your Affiant believes that the evidence listed in item 2 [methamphetamine] of the above is currently being kept/concealed at the place and premises described in item 1 of the above which is a violation of Texas Health and Safety Code 481.115.

Appellant maintains the affidavit is insufficient because it did not contain any information about the informant's credibility. However, the circumstances of a controlled buy standing alone may be sufficient to reasonably confirm an informant's information and give probable cause to issue a search warrant. *See Ford v. State*, 179 S.W.3d 203, 212 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Sadler v. State*, 905 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *Salazar v. State*, 806 S.W.2d 291, 294 (Tex. App.—Amarillo 1991, no pet.). Here, Officer Copeland had control of the informant. He searched the informant and found him to be free of controlled substances before sending him into the apartment. Officer Copeland and others watched the informant go to the apartment, enter it, and exit a short time later. The informant presented methamphetamine he purchased inside and told the officers he observed more. Officers searched the informant again, and he did not have any other controlled substances. As in *Moreno v. State*, the police observations of the controlled purchase and the reasonable inferences therefrom were sufficient to support a finding of probable cause. *See Moreno v. State*, 415 S.W.3d 284, 288-89 (Tex. Crim. App. 2013) (affidavit did not contain

–4–

information about credibility or reliability of person who went into defendant's house and purchased cocaine); *see also Sadler*, 905 S.W.2d at 22. Considering the totality of the circumstances and giving deference to the magistrate's decision, we conclude that this affidavit provided sufficient facts to establish that methamphetamine would be found at the apartment. We overrule appellant's first point of error.

## STATE'S USE OF FALSE TESTIMONY

In his second point of error, appellant contends his due process rights were violated by the State's knowing use of perjured testimony from Detectives Jeffrey French and Andrew Chance. Appellant did not ask the trial court to take any action on this issue, however, and thus has no ruling to complain of on appeal. Further, even if we consider the merits of appellant's point, we conclude there was no due process violation. The defense was aware the testimony in question was false from the outset, the State took action to discover it was false during trial, and the defense impeached the detectives with their false testimony. Further, the testimony in question was not material.

Detectives French and Chance were part of the team that executed the search warrant at appellant's apartment. French testified that no photos were taken of the crime scene because the batteries in the police camera were not working. French testified that two bags of methamphetamine and two digital scales were found in a kitchen drawer. Chance testified about searching appellant's bedroom closet. He described a square closet with a head-high shelf that ran all the way around. Chance stated that he found methamphetamine in a Tupperware container in the left corner of the shelf next to a stack of folded clothes. Chance also testified that he found money on the same shelf. According to the detective, there were a couple of bills in plain view and the rest was hidden in between the folded clothes. Chance stated it was very common in drug cases to find money hidden in clothes. He explained:

–5–

Based on our training and experience, it's more low-key than a safe would be. Safe draws a lot of attention to traffic that might be coming in and out of the area. It's very low-key, very easy to miss on a search. If it's got jackets next to it or pair of jeans in the pocket - - it's stacked among five or six pair of jeans, we find money there all the time.

On cross-examination, defense counsel questioned Chance thoroughly about finding the money and drugs in the closet. Chance stated he remembered clearly finding the Tupperware container in the corner of the closet. There were no clothes on the container. He also remembered clearly finding money sandwiched in between folded clothes. Counsel asked Chance if he was clear the money he found was not in a safe, and he replied, "That's correct." When asked if he would be willing to stake all his testimony on whether the money was in a safe, Chance stated, "I believe so, yes." Chance indicated that officers found a safe in the closet, but it was empty. At that point, defense counsel asked to take up a matter outside the jury's presence. The trial court excused the jurors, and no further proceedings occurred on the record that day.

The next morning, outside the presence of the jury, defense counsel cross-examined Detective Chance again and played five short videos for him. Counsel wanted to determine outside the jury's presence if Chance recognized the videos. Chance recognized what was in the videos and indicated the videos were made by someone at or near the time appellant's closet was searched. Counsel asked to be able to play the videos for the jury and ask Chance further questions, and the court granted his request.

Three of the videos were of appellant's closet and the other two were of his kitchen drawers. The videos of the kitchen showed the drugs and one scale in one drawer and the second scale in another kitchen drawer. The videos of the closet showed that the Tupperware container of methamphetamine was found on the top shelf on the right side of appellant's closet, not the left. The container had an article of clothing stacked on top of it. Also, the videos showed that money was found in a safe on a lower shelf in the closet.

The prosecutor stated that the videos came to his attention the previous night. They were found on a server of former Mesquite Police Officer McAlister, who was incarcerated in the federal penitentiary for theft. Defense counsel then offered for record purposes a copy of an e-mail forwarded to him by an assistant district attorney, who did not participate in appellant's trial, on August 17, 2012, almost six months before trial. Attached to the e-mail was one of the videos just played in court. Counsel said he had four other e-mails with the other videos attached. Thus, according to counsel, the State put on direct evidence contrary to evidence it had in its possession for several months.

The prosecutor maintained there was nothing to indicate the officers knowingly deceived the jury. He stated the videos came to his attention near the end of trial the previous day. He stated, "[W]e did our diligent effort with these officers to try to find more where the videos existed." The videos went to an officer who was no longer with the department. The prosecutor telephoned defense counsel that night to let him know the State had the videos. Defense counsel replied that just three days earlier, he had called that prosecutor asking to "look at those videos again" because counsel thought they were on a disk he could not find. The prosecutor told counsel there was no video in this case. Defense counsel realized the videos had been forwarded by e-mail and found the appropriate e-mails. Counsel reasserted his position to the court that the State presented false evidence to jury, but did not ask the court to take any action, and the trial proceeded.

Appellant's counsel continued to cross-examine Detective Chance before the jury. Counsel played the five videos and then questioned Chance about his testimony the previous day. When asked why he didn't tell the jury the truth, Chance answered that he made a mistake. He also stated, "After seeing the video, my memory is refreshed. I realized I made a mistake. I knew there was narcotics and money in the closet. After seeing the video, I didn't recall

correctly." Chance testified that the search warrant had been executed almost three years before trial. Since that time, he had executed approximately sixty to seventy additional search warrants. Chance maintained that, although the videos did not show it, some money was found between the clothes in addition to in the safe.

The State then recalled Detective French. He testified that he e-mailed the videos to the DA's office the previous August, and then the DA's office provided them to the defense. French recalled that on the previous day he testified that two bags of methamphetamine and two scales were found in one drawer in the kitchen. After reviewing the videos, French testified that they found the drugs and one scale in one drawer and the second scale in another kitchen drawer. He explained that he made a mistake about where the scales were found. He was not trying to lie to or mislead the jury.

Appellant contends that because the State allowed two of its witnesses to testify falsely, his due process rights were violated and his conviction should be reversed. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity and the trial court ruled on the request, objection, or motion or refused to rule. TEX. R. APP. P. 33.1(a); *see Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Here, while appellant told the trial court that the State had presented false evidence to jury, he did not raise a due process complaint. Moreover, appellant did not ask the court to take any action in regard to the false testimony. Accordingly, he has not presented any error for us to review. *See Broxton*, 909 S.W.2d at 918 (court of criminal appeals refused to address defendant's due process complaint where he made different objection at trial).

At oral argument, defense counsel asserted that even without a specific objection or a ruling from the court, we could consider whether appellant's due process rights were violated. Even if we consider the merits of appellant's argument, we conclude there was no due process violation.

A conviction procured through the use of false testimony is a denial of the due process guaranteed by the United States Constitution. *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011); *Ex parte Chabot*, 300 S.W.3d 768, 770-71 (Tex. Crim. App. 2009). To constitute a due process violation, the testimony used by the State must have been false and it must have been material to the defendant's conviction, meaning there is a reasonable likelihood the false testimony could have affected the judgment of the jury. *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). A due process violation may arise through false testimony specifically elicited by the State, as well as the State's failure to correct testimony it knows to be false. *Ghahremani*, 332 S.W.3d at 477. "It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence." *Id.* (quoting *Duggan v. State*, 778 S.W.2d 465, 468-69 (Tex. Crim. App. 1989)). There is no requirement that the offending testimony be criminally perjurious; it is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.*

Appellant's conviction was not procured through the use of false testimony. The State had an ethical and constitutional duty to correct known false evidence, *see Duggan*, 778 S.W.2d at 468, and it took steps to do so in this case. The prosecutor who tried the case did not know the videos existed when he called French and Chance as witnesses. After appellant's counsel vigorously cross-examined Detective Chance, the prosecutor located the videos of the crime scene and phoned defense counsel to inform him of that fact before trial resumed. There is nothing in the record to suggest the false testimony was the result of anything other than a

mistake or oversight. Defense counsel had the video evidence before trial, impeached the detectives with it, and used the fact that the detectives had testified incorrectly in his closing jury argument. *See Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (no due process violation where State corrected false testimony in closing argument and defense used information to support theory of case and attack witness's credibility). This case is unlike the cases appellant cites in which the false testimony goes undetected until after trial. *See, e.g.*, *Ghahremani*, 332 S.W.3d at 474; *Chabot*, 300 S.W.3d at 770.

Further, there was no due process violation in this case because the false testimony was not material to the outcome. The fact that one of the scales was found in a drawer in the kitchen by itself instead of in the same drawer with the drugs and the other scale is immaterial. The same can be said of the fact that the Tupperware containing methamphetamine was found on the right side of the closet rather than the left and had clothes on top of it. The biggest falsehood was Chance's testimony that there was no money found in the safe; he claimed the money was found hidden in a stack of clothing. Yet, even this cannot be said to be material. In other words, there is not a reasonable likelihood the false testimony affected the judgment of the jury. The discrepancies do not change the fact that police found over 1,000 grams of methamphetamine, with a total value of over $100,000, two scales, and a large amount of cash in appellant's apartment. We overrule appellant's second point of error.

## CONFIDENTIAL INFORMANT'S FILE

In his third point of error, appellant contends the trial court erred in denying his motion to require the State to produce the confidential informant's file for an in camera inspection. Because the trial court asked the State to bring any mitigating evidence to the court's attention and because the record shows there was no file on the confidential informant to produce, appellant's point lacks merit.

Prior to trial, appellant filed a motion seeking production of any exculpatory evidence in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963). After voir dire, defense counsel asked for the confidential informant's file to be produced for in camera review. The trial court denied the request but instructed the State to look for any exculpatory or mitigating evidence and bring it to the court's attention. Later, after the State rested, defense counsel reasserted his previously filed *Brady* motion and asked if the prosecutors had found any exculpatory, impeaching, or mitigating evidence. The prosecutors responded that they had no evidence falling within the *Brady* rules. Defense counsel then asked the State to give the court "whatever documents they have documenting that registered confidential informant" so the court could determine if there was anything that was material. The prosecutor responded that he spoke to detectives about whether they kept files on confidential informants and was informed they do not keep physical files. They just have an Excel spreadsheet with contacts on the informants. The prosecutor asked the detectives if they had any exculpatory information regarding the informant involved in this case and the detectives said they did not. The trial court ruled, "Well, I grant your request for me to have it if they had it. Apparently, they don't have it."

Although the trial court initially denied appellant's request for the State to produce the confidential informant's file, it simultaneously told the State to look for and bring any exculpatory evidence to the court's attention. When the issue was revisited later, the prosecutor stated he had no exculpatory information regarding the informant and that the detectives did not keep files on their informants. At that point, the court granted appellant's request for production of the file if there was one. Because there was no file on the confidential informant to produce, there was no error in the trial court's handling of this matter. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990), *disavowed on other grounds by Madden v. State*, 799 S.W.2d 683 (Tex. Crim. App. 1990) (*Brady* does not require prosecuting authorities to disclose

exculpatory information that State does not have in its possession and that is not known to exist). We overrule appellant's third point of error.

**EVIDENCE OF OFFICER'S CONVICTION**

In his fourth point of error, appellant contends the trial court erred in refusing to allow evidence that Mesquite Police Officer McAlister, a member of the law enforcement team that searched appellant's apartment, was later convicted of theft of property from crime scenes. In his brief, appellant relies again on *Brady* to argue that the court erred in prohibiting use of exculpatory and material evidence. To find reversible error under *Brady*, a defendant must show that the State failed to disclose evidence, the withheld evidence is favorable to him, and the evidence is material. *Pena v. State*, 353 S.W.3d 797, 808 (Tex. Crim. App. 2011).

As described earlier, Officer McAlister's name first came up during trial outside the jury's presence during the discussion about the videos taken of the crime scene. The prosecutor stated that the videos were found on a server of Officer McAlister, who was incarcerated in the federal penitentiary for theft. The State asked "that we limine any type of reference to Officer McAlister," and appellant's counsel agreed to go along with that.

Later after the State rested its case, another hearing was held outside the presence of the jury. Defense counsel brought up the State's motion in limine regarding Officer McAlister. Counsel stated that McAlister was a member of the search team and that Detective French retrieved the videos from McAlister's computer. Counsel stated that McAlister was in the federal penitentiary "for his duties while a police officer of stealing from crime scenes." Counsel noted that the police did not recover the money given to the informant from appellant's apartment. Counsel asked the court for permission to go into the fact that a member of the search team was later convicted and sentenced "based upon theft in his legal capacity as a peace officer."

–12–

In response, the prosecutor argued that McAlister's conviction was not relevant. McAlister was not involved in retrieving any of the evidence or money found. There was no issue of money being stolen from the scene. French did not know where the marked bills were, but that did not mean they were stolen. Further, Detectives French and Chance both testified they did not know who took the videos at appellant's apartment.

The court allowed the defense to develop the record by calling the officers outside the jury's presence to see if McAlister's conviction was relevant. Detective French confirmed that McAlister was part of the search team. He testified that McAlister had been convicted and sentenced to the federal penitentiary "base[d] upon his difficulties as a police officer." When asked if the conviction had "to do with stealing . . . items retrieved during searches of crime scenes," French said, "He was stealing money, yes, sir." French said that McAlister was convicted of stealing money "basically during an investigation, not one of these raids."

French further testified that someone retrieved the videos off a server that was or had been under the control of Officer McAlister. French did not know if McAlister made the videos, but said it was possible. French stated that he did not know where the funds given to the confidential informant were. On redirect, French testified that there was never an issue of any of the $1,136 found at appellant's apartment being missing or stolen. French gave the confidential informant money to purchase the drugs before he went into the apartment. When the informant returned, he was searched again and did not have any money. French believed the money he gave the informant was part of the $1,136 recovered in the apartment. He said the serial numbers from the bills should have been recorded, but were not. French stated that McAlister did not take the money given to the confidential informant. At the conclusion of French's testimony, the trial court stated it was still enforcing the motion in limine and the defense made no further argument or objection.

Appellant has waived this point for various reasons. First, the only argument in his brief in support of the admissibility of this evidence and the only cases cited involve *Brady* and the State's failure to disclose exculpatory evidence. Yet when appellant asked the trial court for permission to go into McAlister's conviction, he did not mention *Brady* or give any specific reason why the evidence should be admitted. Thus, appellant did not make his request with sufficient specificity, and he is now raising an argument he did not present to the trial court. *See* TEX. R. APP. P. 33.1(a) (request or objection must state grounds for ruling with sufficient specificity). Further, appellant acknowledges in his brief that the State disclosed the fact of McAlister's conviction. Accordingly, by appellant's own admission, *Brady* does not even apply to this situation. *See Pena*, 353 S.W.3d at 808. An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities. TEX. R. APP. P. 38.1(i). Appellant has failed to provide relevant argument and authority in support of this point. We are under no obligation to construct for appellant an argument about why the evidence was admissible. *See Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). For these reasons, he has waived this point of error.

Even if we consider whether the court erred in excluding the evidence, there was no error. We review a trial court's decision to exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.*

The State argued to the trial court that the evidence of McAlister's conviction was not relevant. Relevant evidence must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402.

–14–

The State did not call McAlister as a witness. Although McAlister was part of the search team, it is unclear what his exact role was. He may have taken the videos of the crime scene. Detective Chance testified that he found the money in the closet. There was no evidence that McAlister had anything to do with the money in this case. McAlister was convicted after the search of appellant's apartment, and his conviction was not related to appellant's case. Also, there was nothing to suggest that any money was missing from the crime scene in this case. The police could not track the informant's money because they did not record the serial numbers. There was no way to confirm that the money given to the informant was part of the $1,136 found in the apartment, but French believed it was. Under these circumstances, the trial court could have reasonably concluded that evidence of McAlister's theft conviction was not relevant. We overrule appellant's fourth point of error.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130608F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PHILLIP RAMIREZ, Appellant

No. 05-13-00608-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1042390-W.
Opinion delivered by Justice Brown.
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of July, 2014.