FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

PD-1626-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/16/2015 1:46:35 PM
Accepted 12/18/2015 1:36:16 PM
ABEL ACOSTA
CLERK

Case No. PD-_____-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**ALLAN LATOI STORY**
**Appellant**

**v.**

**THE STATE OF TEXAS**
**Appellee**

Petition from the Thirteenth Court of Appeals No. 13-14-00038-CR
affirming the judgment in Cause Number 2011-2499-C1
from the 19th Judicial District Court of McLennan County, Texas

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**Attorney for Appellant:**
Doyle L. Young
State Bar No. 00797718

Law Office of Doyle L. Young, P.C.
P.O. Box 2174
Waco, TX 76703
Telephone: (254) 855-1108
Fax: (800) 620-7961
Email: dyoung.law.waco@gmail.com

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Trial Judge:                    The Honorable Ralph Strother

Appellant:                     Allan Latoi Story

Appellant's Appellate Counsel:     Doyle L. Young
Law Office of Doyle L. Young, P.C.
P.O. Box 2174
Waco, TX 76703

Appellant's Trial Counsel:        Samuel Martinez
1105 Wooded Acres, Suite 200
Waco, TX 76710

Appellee:                      The State of Texas

Appellee's Appellate Counsel:      Abel Reyna
Criminal District Attorney
219 N. 6th Street, Suite 200
Waco, TX 76701

Appellee's Trial Counsel:         J.R. Vicha
Chris Bullajian
219 N. 6th Street, Suite 200
Waco, TX 76701

1

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel ............................................. 1

Index of Authorities .................................................................. 3

Statement Regarding Oral Argument ................................................ 4

Statement of the Case ............................................................... 4

Statement of Procedural History ................................................... 4

Grounds for Review .................................................................. 5

    1. The Court of Appeals erred by not following precedent when it concluded that Appellant was not entitled to a self-defense instruction. (Slip Op. 13). This error is a sufficient reason for the granting of review under TEX. R. APP. PROC. 66.3(f).

    2. The Court of Appeals erred by not following precedent when it refused to consider Appellant's appellate issue regarding a properly-made evidentiary request on the ground that the request was not made and thus not preserved. (Slip Opin. 6-7). This error is a sufficient reason for the granting of review under TEX. R. APP. PROC. 66.3(f). ...............................................

Argument ............................................................................. 5

    1. Ground No. 1 ................................................................ 5

    2. Ground No. 2 ................................................................ 8

Prayer for Relief .................................................................... 12

Certificate of Service .............................................................. 13

Certificate of Compliance .......................................................... 13

Appendix ............................................................................. 14

# INDEX OF AUTHORITIES

## CASES

*Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) ……………….. 5

*Shaw v. State*, 243 S.W.3d 647, 657-658 (Tex. Crim. App. 2001) …………… 6

## STATUTES AND RULES

TEX. R. APP. PROC. 66.3(f) …..………………………………………………… 4

## STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument.

## STATEMENT OF THE CASE

Appellant Story was indicted for murder. At trial, the trial court refused Appellant's request for a jury instruction on self-defense. The trial court also refused to admit a CD recording of a police interview with Appellant made 3-4 hours after the stabbing in which Appellant asserted self-defense and which would have supported the submission of a jury instruction on self-defense. The jury convicted Appellant and assessed his punishment at life in prison.

The Court of Appeals affirmed the conviction, holding that Appellant was not entitled to a self-defense instruction because there was no evidence that Appellant reasonably believed the use of deadly force was immediately necessary to protect himself at the time he stabbed the victim. This petition challenges that holding.

The Court of Appeals also refused to consider Appellant's appellate issue regarding the trial court's refusal to admit the CD recording of appellant's police interview 3-4 hours after the stabbing. The Court of Appeals held that Appellant's trial counsel did not preserve this issue. This petition challenges that holding.

## STATEMENT OF PROCEDURAL HISTORY

4

In an unpublished Memorandum Opinion delivered and filed November 19, 2015, the Thirteenth Court of Appeals affirmed the judgment of the trial court. A Motion for Rehearing was not filed.

## GROUNDS FOR REVIEW

1.     The Court of Appeals erred by not following precedent when it concluded that Appellant was not entitled to a self-defense instruction. (Slip Opin. 13). This error is a sufficient reason for the granting of review under TEX. R. APP. PROC. 66.3(f).

2.     The Court of Appeals erred by not following precedent when it refused to consider a properly-made evidentiary request on the ground that the request was not made and thus not preserved. (Slip Opin. 6-7). This error is a sufficient reason for the granting of review under TEX. R. APP. PROC. 66.3(f).

## ARGUMENT

### A. Ground No. 1 - The Court of Appeals erred by not following precedent when it concluded that Appellant was not entitled to a self-defense instruction. (Slip Opin. 13).

1. The Court of Appeals' holding

The Court of Appeals held that Appellant was not entitled to a self-defense instruction because "… there is no evidence that he [Appellant] reasonably believed the use of deadly force was immediately necessary to protect himself at

5

the time he stabbed Zachary." (Slip Op. 13). In reaching this conclusion, the Court of Appeals failed to follow precedent and overlooked significant facts.

## 2. The controlling precedent

The Court of Appeals did correctly state the controlling precedent: an appellate court must view the evidence in the light most favorable to the defendant's requested instruction." (Slip Op. 11, quoting *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). But the Court of Appeals did not follow this precedent.

## 3. The evidence

Appellant did not testify at his trial. There were two witnesses to the fatal fight between Appellant and the victim and they did testify.

### a. Witness number one

The Court of Appeals accepted and followed the testimony of Joyce Akers. Her account of the fatal fight indicated that the combatants had separated before Appellant approached the victim and stabbed him. (III R.R. at 38-39; 49-50). This testimony ostensibly supports the Court of Appeals' conclusion that Appellant did not reasonably believe that the use of deadly force was immediately necessary to protect himself from the victim.

### b. Witness number 2

6

But the Court of Appeals overlooked the testimony of Rene Davis, the other witness to the fight, and her testimony does provide enough evidence to require the self-defense instruction to be given.

Under Texas law, evidence is sufficient to require a jury instruction if there is some evidence, from any source, from which a jury could rationally infer that the element is true, i.e. in the instant case, that Appellant did reasonably believe that the use of deadly force was immediately necessary. *Shaw v. State*, 243 S.W.3d 647, 657-658 (Tex. Crim. App. 2007). Rene Davis' testimony did provide sufficient evidence from which a jury could rationally infer that Appellant did reasonably believe that the use of deadly force was immediately, particularly if the Court of Appeals had correctly applied the precedent of viewing the evidence in the light most favorable to the defendant's requested admission.

Specifically, Rene Davis testified that she and Appellant were in a heated argument, into which the victim, her brother, inserted himself. The victim punched Appellant. Rene joined in the assault on Appellant and Appellant was knocked to the ground. (IV R.R. at 33-34). The victim and Rene were standing up over Appellant and hitting him. (IV R.R. at 35). Rene was hitting Appellant with a stick as thick as her wrist and 2-3 feet long. (IV R.R. at 34-35, 52). She testified that it was a big stick. (IV R.R. at 52). At some time during this beating of

7

Appellant, Rene saw blood on the victim and she and the victim allowed Appellant to get up off the ground. (IV R.R. at 36).

### 4. Conclusion

Viewing the evidence in the light most favorable to the defendant's requested submission, there is some evidence from which a jury could rationally infer that Appellant reasonably believed that the use of deadly force was immediately necessary to protect himself from his attackers. Therefore, the Court of Appeals erred regarding the facts when it concluded that there was no evidence that Appellant reasonably believed the use of deadly force was immediately necessary and the Court of Appeals did not follow precedent when it held that Appellant was not entitled to the jury instruction regarding self-defense.

## B. Ground No. 2 - The Court of Appeals erred by not following precedent when it refused to consider Appellant's appellate issue regarding a properly-made evidentiary request on the ground that the request was not made and thus not preserved. (Slip Opin. 6-7).

### 1. The Court of Appeals' holding

The Court of Appeals held that Appellant's request for admission of a recorded interview with Appellant made by Officer Ireland 3-4 hours after the stabbing (the Ireland CD) on the ground that it rebutted the State's emphasis that Appellant concocted his assertion of self-defense weeks after the stabbing was not preserved for appeal because Appellant did not make that request in the trial court.

8

Therefore, the Court of Appeals did not consider this appellate issue. (Slip Opin. 6-7). In doing so, the Court of Appeal's opinion demonstrates a misreading of the Reporter's Record and a misunderstanding of the facts stated in it. These mistakes led to the erroneous holding.

## 2. The facts

The Court of Appeals misunderstood an exchange between the trial judge and Appellant's trial counsel. There are several salient background facts that must be recited before turning to this exchange.

Officer Ireland's interview of Appellant 3-4 hours after the stabbing, which occurred in the back of his patrol car, was recorded (III R.R. at 65-67). In this interview, Appellant asserted that he had defended himself in the fight against Rene Davis and the victim. (Defense Exhibit 1 at 3:55:00 – 3:58:35). Appellant's trial attorney offered the CD as impeachment evidence to rebut the impression Officer Ireland left with the jury that Appellant was uncooperative at the time of his arrest. (III R.R. at 69-70). The court sustained the State's hearsay objection. (III R.R. at 70).

During the cross-examination of Rene Davis, one of the witnesses to the fight, the State laboriously created the impression that Appellant and Renee Davis concocted the assertion of self-defense during Rene Davis' four visits to Appellant at the jail in the weeks after the stabbing. (IV. R.R. at 43-51).

9

Appellant's attorney made an offer of proof regarding the proffered testimony of police detective Steve January, who interviewed Appellant on the night of the stabbing but after Officer Ireland's interview. (IV R.R. at 93-95). Appellant's attorney told the trial judge that the reason for this offer of proof related to January's interview of Appellant "and it's about just the investigation in general which requires going into the recording," i.e. the Ireland CD. (IV R.R. at 93). January said that the issue of self-defense came up during his interview of Appellant. (IV R.R. at 94). In response to questions from Appellant's attorney, January said that he did collect the video and audio from the police car cameras. (IV R.R. at 95). This included the Ireland CD. Appellant's attorney asked January if he had talked to Officer Ireland on the evening of the stabbing and January said that he did. (IV R.R. at 94-95). There was no reference to any CD recording of January's interview of Appellant.

Appellant's attorney then offered January's testimony as impeachment of the State's implication that Appellant and Rene Davis concocted the self-defense theory. (IV R.R. at 96).

The trial judge then said, "And there was also the audio recording of your client in the back of the patrol car," i.e. the Ireland CD. (IV R.R. at 96). This indicates that the trial judge was thinking that the Ireland CD was also relevant impeachment evidence regarding the State's implication of concoction. In response, Appellant's

10

attorney asserted that Ireland's interview with Appellant would be highly relevant because Appellant gave a statement to Ireland at that time (IV R.R. at 96-97), i.e. not several weeks later while talking to Rene Davis at the jail. It appears that the fair interpretation of Appellant's counsel's words are that, in light of the offer of January's testimony to rebut the State's implication that Appellant and Rene Davis concocted the self-defense theory weeks after the stabbing, the Ireland CD would also be relevant and should be admitted. Then the discussion continued:

MR. MARTINEZ: . . . I think also the CD could be entered as far as that impeachment as far as the officer's impression he left.

THE COURT: Well, it's still hearsay, and you can't get into it. I'm not going to admit it. (IV R.R. at 97).

### 3. Conclusion

It appears clear that Appellant's attorney and the trial judge thought this discussion was about admitting the Ireland CD as evidence to rebut the State's assertion of concoction. (Further, Appellant's attorney also urged admission of the Ireland CD to rebut Ireland's assertion that Appellant was uncooperative when arrested.)

Further, it appears clear that the "it" the judge is not going to admit is the Ireland CD which he and Appellant's counsel had just been discussing.

11

The Court of Appeals misunderstood this exchange between the trial judge and Appellant's attorney, thinking that it referred to the proffer of Detective January's testimony regarding his interview of Appellant on the night of the stabbing.

This led the Court of Appeals to its error – it concluded that Appellant's trial attorney did not request admission of the Ireland CD for the purpose of rebutting the State's suggestion of concoction. Based on this erroneous conclusion, the Court of Appeals then erroneously held that Appellant did not preserve this issue for appeal. Therefore, the Court of Appeals did not consider it, which is a failure to follow precedent.

## PRAYER FOR RELIEF

Regarding Ground No. 1, Appellant requests that the Court of Criminal Appeals reverse the judgment of "Guilty" and remand this case to the trial court for a new trial.

Regarding Ground No. 2, Appellant requests that the Court of Criminal Appeals reverse the judgment of "Guilty" and remand this case to the trial court for a new trial.

Respectfully submitted,

**LAW OFFICE OF DOYLE L. YOUNG, P.C.**

/s/ Doyle L. Young

Doyle L. Young
State Bar No. 00797718

100 N. 6th Street, Suite 600
P.O. Box 2174
Waco, TX 76703
(254) 855-1108 phone
(800) 620-7961 fax
dyoung.law.waco@gmail.com
**Attorney for Appellant**


## Certificate of Service

I hereby certify that a copy of this petition was served on the McLennan County District Attorney's office, attn. Sterling Harmon, via the court's electronic filing system, on December 16, 2015. I further certify that on the same date a copy of this document was mailed via Certified Mail, Return Receipt Requested, to Appellant Allan Latoi Story, Beto Unit – TDCJ, 1391 FM 3328, Tennessee Colony, TX 75880. A copy of this document was also served the same day by Certified Mail, Return Requested, on the State Prosecuting Attorney, P.O. Box 13406, Austin, TX 78711.

/s/ Doyle Young
Doyle Young


## Certificate of Compliance

I hereby certify that this petition complies with the word-count limit of TEX. R. APP. PROC. 9. The petition contains 2,499 words and complies with the typeface requirements and type style requirements in that it has been produced on a computer in conventional typeface using Word 2007 in Times New Roman 14-point font. The electronic file of this petition is free of computer virus and malware.

/s/ Doyle Young
Doyle Young

13

## APPENDIX

## INDEX

Court of Appeals opinion ............................................................. 1



# NUMBER 13-14-00038-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

ALLEN LATOI STORY,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

---

## On appeal from the 19th District Court
## of McLennan County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Perkes
### Memorandum Opinion by Justice Perkes[1]

Appellant Allan Latoi Story appeals his conviction for murder, a first-degree felony,

enhanced by prior convictions.   *See* TEX. PENAL CODE ANN. §§ 12.42(c), 19.02(b)(1), (c)

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Tenth Court of Appeals in Waco, Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

(West, Westlaw through 2015 R.S.). A jury found appellant guilty and assessed punishment at life imprisonment. By two issues, appellant argues the trial court erred: (1) by excluding evidence of a recorded interview between appellant and a police officer; and (2) by refusing to give a jury instruction on self-defense. We affirm.

## I. BACKGROUND

Appellant was indicted for murder relating to the stabbing death of Zachary Davis. Joyce Akers testified that she was a longtime friend of Rene Davis, Zachary's sister. Akers was at Rene's apartment with Zachary, Rene, and appellant on the night of the altercation. She recalled that Rene and appellant were arguing, when appellant said "if you keep at it, I'm going to put my hands on you." Zachary responded "as long as I'm here, you're not going to put hands on her." Appellant told Zachary that if he interfered, he would kill him. Akers testified that appellant then left the room, and when he returned, Zachary told him "whatever you went back there to get or whatever you call yourself doing, you're going to have to use it." Appellant then walked out the back door, and Rene followed as the two continued arguing. Akers testified that appellant then grabbed Rene and lifted her up by her throat. At that time, Zachary intervened and struck appellant with his fist, which resulted in a physical altercation between Zachary and appellant. Akers recalled that, as Zachary and appellant were punching each other, appellant fell to the ground and Rene started hitting appellant. Akers testified that the fighting stopped and appellant stood up and walked toward the back door, while Zachary walked away from the back porch and into the yard. As appellant was walking away, he dropped a knife and picked it up. Akers stated appellant then approached Zachary who fell to the ground

2

on his back. Akers testified appellant got on top of Zachary and stabbed him several times, while she yelled "please stop stabbing him." After the stabbing, Rene ran into the house and came back outside with a hammer. Appellant stood up and entered the apartment, while Zachary ran away from the apartment. Akers stated that neither Zachary nor Rene had a weapon when they were fighting appellant.

Officer Jason Ireland with the Waco Police Department testified that he responded to the scene and observed Zachary on the ground gasping for breath. Zachary died shortly after his arrival. Officer Ireland learned that appellant was suspected of stabbing Zachary and obtained his cell phone number. He attempted to locate appellant's cell phone by determining its GPS location. For three to four hours, Officer Ireland and other law enforcement officials searched for appellant using "pings" from appellant's cell phone. Officer Ireland narrowed appellant's location to a residence within four to five blocks of the crime scene. After confirming appellant was located in the house, an officer with a canine called for him to come out. After two commands from the officer, appellant exited the residence. Officer Ireland did not observe any physical injuries, and appellant did not request medical treatment. Appellant was arrested and taken to the county jail.

Appellant's counsel questioned Officer Ireland outside the presence of the jury concerning his interview with appellant. Officer Ireland testified he talked to appellant in his patrol car shortly after his arrest, and the interview was recorded. During the interview, appellant stated "[Rene and Zachary] were jumping me and I defended myself." Appellant claimed that he saw a hammer and some knives. Appellant stated he was on

3

the ground and "they hit me first." Appellant explained that "[Zachary] hit me and I fell to the ground and [Rene] came over and kicked me."

Appellant's counsel moved to admit the recorded interview as impeachment of Officer Ireland's testimony "about [appellant's] voluntariness of coming out of the house and also about injuries and so forth." Appellant's counsel also argued the recording was admissible under "Texas Rules of Evidence 107, the Rule of Optional Completeness." The State objected that the video was hearsay and irrelevant. The trial court sustained the State's objections.

Angelika McCallister, a crime scene technician for the Waco Police Department, testified concerning photographs of the crime scene and the parties involved in the altercation. McCallister explained that appellant had a number of superficial and non-life threatening injuries, but that Rene did not exhibit any injuries.

Dr. Janice Townsend-Parchman, the Dallas County medical examiner, performed Zachary's autopsy. She testified that Zachary suffered three stab wounds to the: (1) front left shoulder, penetrating 4¾ inches; (2) liver, penetrating 4¾ inches; and (3) right thigh, penetrating 3 inches. Dr. Townsend-Parchman concluded the three stab wounds caused Zachary's death.

Rene testified during appellant's case-in-chief. Rene stated that after arguing with appellant, she went outside with Zachary. Appellant followed them, and they continued to argue. Rene testified Zachary punched appellant "because [appellant] acted like he was going to choke me." Rene denied that appellant picked her up by her throat. During the altercation between appellant and Zachary, appellant ended up on the

4

ground, and she began hitting appellant with a stick. Rene estimated that the stick was two to three feet long and less than four inches in diameter. After she saw appellant stab Zachary, she went inside the apartment to get a hammer. Rene was not sure if she hit appellant with the hammer or not. Following the altercation, appellant ran into the apartment and locked the door, while Zachary ran toward the parking lot.

On cross-examination, Rene testified that she gave a statement to police on the night of Zachary's death, but did not mention the stick or the hammer because she was scared. Rene acknowledged she visited appellant in the jail on four occasions following Zachary's death. She admitted appellant asked her to marry him during one of the visits and discussed his upcoming trial with her.

The jury found appellant guilty and assessed punishment at life imprisonment. This appeal followed.

## II. HEARSAY

By his first issue, appellant argues "the trial court erred in excluding from evidence an audio recording of an interview of appellant by a police officer that was made 3–4 hours after the stabbing of the victim." Specifically, appellant maintains the video recording was not hearsay because it was not offered to prove the truth of the matter asserted. We disagree.

### A. Preservation

We must first address whether the issue raised on appeal comports with the objection made at trial. To have evidence admitted over a hearsay objection, the proponent of the evidence must specify which exception he is relying upon or how the

5

evidence was not hearsay. *Willover v. State*, 70 S.W.3d 841, 845–46 (Tex. Crim. App. 2002); *see also Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("So it is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible."). Additionally, to complain about a trial court's evidentiary ruling, a party must have first made his complaint to the trial court in a manner that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A). If the trial court never has the opportunity to rule upon the proponent's appellate rationale, the argument cannot be raised on appeal. *See Reyna*, 168 S.W.3d at 178.

At trial, appellant's counsel argued that the recorded interview was admissible over the State's hearsay objection to impeach Officer Ireland's testimony "about [appellant's] voluntariness of coming out of the house and also about injuries and so forth."[2] On appeal, appellant argues two theories for the admissibility of his statements to Officer Ireland. First, appellant maintains that the statements are admissible to show that "appellant began to say he was defending himself far earlier than the State had deliberately misled the jury to think." Appellant did not make this argument to the trial court with respect to his statements to Officer Ireland. Rather, the argument was made with respect to appellant's later interview with Detective Steve January.[3] Appellant does

---

[2] Appellant's counsel also argued, at trial, that the recording was admissible under "Texas Rules of Evidence 107, the Rule of Optional Completeness," but he does not raise that argument on appeal.

[3] Story's counsel argued to the trial court that the statements made to Detective January were admissible as impeachment of Rene's testimony "that they were getting their plan together and so forth as far as this case."

6

not challenge the trial court's ruling concerning the admissibility of his statements to Detective January. Therefore, this argument is not preserved for appeal. *See Reyna*, 168 S.W.3d at 178.

Second, appellant maintains on appeal his statements to Officer Ireland were not hearsay because they were offered "to show that Officer Ireland's testimony that appellant was uncooperative . . . was not correct." We will address this argument to the extent it comports with the argument actually raised in the trial court. *See Willover*, 70 S.W.3d at 845–46.

## B. Standard of Review and Applicable Law

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Whipple v. State*, 281 S.W.3d 482, 499 (Tex. App.—El Paso 2008, pet. ref'd). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736; *Whipple*, 281 S.W.3d at 499–500. We will uphold a trial court's decision so long as it is supported by the record and is correct under any theory of applicable law. *De LaPaz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Hearsay is defined by the rules of evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). It is well-settled that when the accused does not take the stand, self-serving statements are generally not admissible. *Hafdahl v. State*, 805 S.W.2d 396, 402 (Tex. Crim. App. 1990), *disavowed on other*

7

*grounds by Cook v. State*, 858 S.W.2d 467, 469–470 (Tex. Crim. App. 1993); *see Reado v. State*, 690 S.W.2d 15, 17 (Tex. App.—Beaumont 1984, pet. ref'd).

> [S]elf-serving declarations of the accused are ordinarily inadmissible in his behalf, unless they come under some exception, such as:  being part of the res gestae of the offense or arrest, or part of the statement or conversation previously proved by the State, or being necessary to explain or contradict acts or declarations first offered by the State.

*Singletary v. State*, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974); *see Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988); *Davis v. State*, 970 S.W.2d 758, 761 (Tex. App.—Austin 1998, no pet.).  "The theory behind the third exception is to prevent the fact finder from being misled or perceiving a false, incorrect impression when hearing only a part of an act, declaration, conversation or, especially, a writing."  *Reado*, 690 S.W.2d at 17.  Under this exception, the proffered testimony may be admitted only if necessary to prevent the jury from being misled or mistaken.  *Id.*

## C.    Analysis

Appellant does not argue that his self-serving statements were admissible as being part of the res gestae of the offense or arrest or that his statements were part of a statement or conversation previously proved by the State.  Rather, appellant maintains that his statements to Officer Ireland were admissible "to show that Officer Ireland's testimony that appellant was uncooperative . . . was not correct."  To determine whether appellant's self-serving declaration would be admissible under this theory, we must decide whether such statements "were necessary to explain or contradict acts or declarations first offered by the State."[4]  *See Singletary*, 509 S.W.2d at 576.

---

[4] While appellant argued at trial that the statements were admissible under Texas Rule of Evidence 613, he does not raise this argument on appeal.  Further, rule 613 would have no application here, because

8

Appellant contends Officer Ireland's testimony that he was uncooperative necessitated admission of his entire recorded statement. Officer Ireland testified that it took officers three to four hours to locate appellant and that appellant did not exit the residence until an officer with a canine issued commands for appellant to come out. Appellant's statements to Officer Ireland focused on his assertions that he acted in self-defense. Officer Ireland offered no testimony concerning his conversation with appellant or whether he acted in self-defense.

In reviewing the record, we find no portion of Officer Ireland's testimony that created a false impression or misled the jury. Therefore, we cannot conclude that appellant's recorded statement was necessary to explain or contradict acts or declarations first offered by the State. *See Reado*, 690 S.W.2d at 17; *see also Allridge*, 762 S.W.2d at 153 (explaining that "to adopt appellant's position would mean that all self-serving statements by an accused would be admissible"). Accordingly, appellant's statements to Officer Ireland constitute inadmissible self-serving hearsay, and the trial court did not abuse its discretion in excluding those statements. *See Martinez*, 327 S.W.3d at 736; *Hafdahl*, 805 S.W.2d at 402. We overrule appellant's first issue.

---

appellant's statements do not constitute a prior inconsistent statement made by Officer Ireland. *See Willover v. State*, 70 S.W.3d 841, 846 n. 8 (Tex. Crim. App. 2002) ("Texas Rule of Evidence 613 allows into evidence (for impeachment purposes) proof of a witness's prior inconsistent statements (provided the proper predicate is established). Such prior inconsistent statements are considered hearsay and, unless they fall within some hearsay exception, they are admissible for impeachment purposes only (as opposed to substantive purposes).").

9

## III. JURY INSTRUCTION

By his second issue, appellant argues the trial court erred by "den[ying] his request for a jury instruction on self-defense because the issue was raised by the evidence." We disagree.

### A. Standard of Review

Appellate review of alleged jury charge error generally involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Id.*; *Ngo*, 175 S.W.3d at 744. If error has been properly preserved, as in this case, reversal is required if the error is "calculated to injure the rights of defendant," meaning there must be some harm. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West, Westlaw through 2015 R.S.); *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). The defendant must have suffered some actual, rather than merely theoretical, harm from the error. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). We consider "'the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

10

## B.    Applicable Law

The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. TEX. PENAL CODE ANN. §§ 2.03(d), 2.04(d) (West, Westlaw through 2015 R.S.); *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. *Walters*, 247 S.W.3d at 209. A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). In determining whether a defensive instruction should have been given, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). The question of whether a defense is raised by the evidence is a sufficiency question, which we review as a question of law. *Shaw*, 243 S.W.3d at 658.

In order for a trial court to submit a self-defense instruction to the jury, a defendant must produce sufficient evidence on each element to raise the issue. TEX. PENAL CODE ANN. § 2.03 (West, Westlaw through 2015 R.S.). Sections 9.31 and 9.32 of the Texas Penal Code provide in relevant part that a person is justified in using deadly force against another "when and to the degree the actor reasonably believes the force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful

11

deadly force." *Id.* §§ 9.31(a), 9.32(a). "Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ. *Id.* § 1.07(a)(46).

## C. Analysis

Appellant did not testify. However, he argues he was entitled to a self-defense instruction on the use of deadly force because he "was on the ground, being assaulted by two adults, one of whom was hitting him with a stick that was 2–3 feet long and as thick as a female's wrist, immediately before he stabbed [Zachary]." The trial court denied the requested instruction, concluding there was "no evidence or testimony that [appellant] reasonably believed that deadly force was necessary to protect himself against somebody else's use of deadly—of unlawful deadly force."

The evidence, viewed in the light most favorable to the requested instruction, reflects that appellant threatened Rene by saying "if you keep at it, I'm going to put my hands on you." When appellant "acted like he was going to choke [Rene,]" Zachary hit appellant with his fist, and the two began punching each other. Zachary and Rene were both hitting appellant while he was on the ground, but at some point appellant was able to get up and Zachary walked away from him. It was at this time appellant approached the unarmed Zachary and stabbed him with a knife and Zachary fell to the ground. While

12

Rene testified she previously struck appellant with a stick, the evidence shows the three had already separated when appellant approached Zachary and stabbed him.

Assuming appellant was initially justified in using non-deadly force in response to being hit by Zachary, there is no evidence that he reasonably believed the use of deadly force was immediately necessary to protect himself at the time he stabbed Zachary. *See Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex. Crim. App. 1986) (holding that reasonableness of fear for a self-defense claim must be judged from the standpoint of the accused at the "instant he responds to the attack"); *Trammell v. State,* 287 S.W.3d 336, 341 (Tex. App.—Fort Worth 2009, no pet.) (concluding that the defendant was not entitled to self-defense instruction in absence of immediacy of threat from victim); *Oestrick v. State*, 939 S.W.2d 232, 238 (Tex. App.—Austin 1997, pet. ref'd) (determining that the defendant was not entitled to a self-defense instruction when victim had a baseball bat but was walking away from defendant when defendant shot the victim).

We conclude appellant was not entitled to a self-defense instruction, and the trial court did not commit error in denying the requested instruction. *See Wooten*, 400 S.W.3de at 606. We overrule appellant's second issue.

### IV. CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2015.

13