

# NUMBER 13-21-00419-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JUAN JIMENEZ GUERRA A/K/A**
**JUAN GUERRA,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

---

**On appeal from the 404th District Court**
**of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña**
**Memorandum Opinion by Justice Tijerina**

Appellant Juan Jimenez Guerra a/k/a Juan Guerra was convicted of continuous sexual abuse of a young child or children under fourteen, a first-degree felony, and sentenced to twenty-seven years' confinement.[1] *See* TEX. PENAL CODE ANN. § 21.02(b).

---

[1] Although the State indicted Guerra with four separate counts of among other things, continuous sexual abuse of a child under fourteen, it proceeded to trial on one count of continuous sexual abuse of a

By three issues, Guerra contends that the trial court (1) "committed *Brady* violations and Michael Morton Act violations in failing to require production of a mobile phone used by one of the complaining witnesses"; (2) "erred by allowing a second outcry witness"; and (3) erred "in submitting jury instructions on Count 1 that did not require a unanimous verdict." We affirm.

## I. *BRADY* AND MICHAEL MORTON

At trial, the State informed Guerra that the mother of the child complainants told the State that one of the complainants said that she recorded Guerra sexually abusing her on a Motorola phone. In addition, the State disclosed to the defense that the police had taken custody of a phone that the complainants' grandmother had provided to them; however, the phone's contents were not produced to Guerra when he requested them at trial. Guerra argues that by not ordering production of the contents of the phone in the State's custody, the trial court violated *Brady* and the Michael Morton Act. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also* TEX. CODE CRIM. PROC. ANN. art. 39.14. Specifically, Guerra argues that because he is innocent, the phone in the State's custody did not contain a video of him sexually abusing the complainant; therefore, he would have used that evidence to impeach the complainant's credibility.

To the extent that Guerra complains that the trial court had a duty under *Brady* to order the State to produce the contents of the phone, the record reflects that the trial court

___

child and indecency with a child by sexual contact. The jury convicted Guerra of the offense of continuous sexual abuse of a child under fourteen, and it acquitted him of the indecency with a child by sexual contact offense. This appeal followed.

2

determined that there was no probable cause to issue a warrant to search the contents of the phone and that it was unknown who owned the phone, rulings that Guerra does not challenge on appeal.[2] Moreover, we note that Guerra appears to complain about the trial court's actions, but he also implicates the State by claiming a *Brady* violation.

## A.    Pertinent Facts

In the trial court Guerra argued inconsistently about the owner of the phone. First, Guerra argued that the phone "was seized from his . . . house" and "[i]f anybody has custodial rights and nobody else comes forward [he] has custodial rights." Later, Guerra said, "And what . . . if, in fact, it is [the complainant's] phone [and] there is a text message of her to her boyfriend where we can prove it[']s her phone."

Guerra then asked the trial court to order a police officer to grant him access to the contents of the phone. Guerra said that access to the contents of the phone "would either prove or disprove her allegations, that's classic cross-examination and impeachment in the credibility of a witness." The State clarified that "the phone was provided in discovery," "was there the whole time," and "there is no way that we know that this phone belongs to the defendant." The State then informed the trial court that is "why it hasn't been broken into in the first place."

An officer told the trial court that someone mentioned that the grandmother had given the phone to the State because there were "nude photographs." The officer clarified

---

[2] The trial court excluded mention of the phone at trial but stated it would allow defense counsel to cross-examine the complainant "concerning her statement" to her mother about the recording, which Guerra did. We also note that Guerra did not file a motion for disclosure or inform the trial court that he was making a *Brady* objection.

3

that he did not see the phone and he did not know who told him about the nude photos.

The trial court said, "From what I understand everyone is saying, it[']s grandma [who] made comment of it but there is never and we don't know if the one that she held up was the one that even would have the nude photos." Guerra replied, "We do have a phone seized from [his] house." The trial court then determined that there was no probable cause "at this time to have any sort of search of anything done on that phone." Guerra said, "No, your Honor. I don't want to do that because first of all, with all due respect, please, your Honor, I object to your ruling and then I am respecting the Court's order for me not to go ahead and cross-examine her concerning her statement." The trial court replied, "No, I am allowing you to do that [outside the presence of the jury], if and when you bring her. Now when that comes up then I may change my ruling as far as this phone." Guerra said, "Yes, sir." The trial court instructed, "So, for now, no reference to the phone. When you decide, if you decide, to ask momma about that then we can deal with it at that time outside the presence of the jury. Just let us know and we will excuse the jury." Guerra stated that he wished to make sure that he understood the trial court's instruction, and said, "It's my understanding the State is going to call [the complainant] first before I have a chance to bring the mother back or do you want me to bring the mother back before they" questioned the complainant. The trial court clarified that Guerra should put the mother on first outside the presence of the jury. Guerra responded, "Yes, sir. Very good." Guerra did not mention *Brady* or the Michael Morton Act.

After the complainant's mother testified about the complainant's claim that she

4

recorded an incident with Guerra, in a hearing outside the presence of the jury, the trial court said, "Well, let's get back to the phone issue here. Apparently, we have a Motorola phone that we cannot identify as either [Guerra's] or his wife's or anybody else's for that matter." At this stage of the proceedings, Guerra claimed that either he owned the phone or that it belonged to the grandmother, his wife. He no longer stated that it belonged to the complainant. Instead, Guerra argued that he has a "superior claim to the ownership of this phone because of the fact that it was in the premises and residence." He consistently stated that he "waived" any privacy rights and that "as a defendant in this case, [he should be allowed] to go ahead and bring that phone and present it to the jury and whatever is inside and we choose to do so."

Guerra did not make a legal argument to support his assertion that he had a right to the phone's contents. He neither mentioned *Brady* nor the Michael Morton Act when he baldly asserted that the phone *may* belong to him and that he waived his rights. The State argued that nothing in the phone would be dispositive to case. The trial court stated it would not rule on the matter and needed some time to think about it. The record does not reflect that the trial court ever revisited the issue of the phone or made a further ruling.

On cross-examination and in the presence of the jury, Guerra asked the complainant if she recalled telling her mother that she made a recording of Guerra sexually assaulting her. The complainant replied, "Yes." The complainant did not recall what kind of phone she used, and she did not know when she made the recording. Guerra asked, "It's on a phone but you don't remember which phone?" The complainant said,

5

"No because [the grandmother] had several phones." Guerra testified that he did not sexually abuse the complainant and that she was "lying" when she told the jury that she recorded him sexually abusing her.

**B.** *Brady*

### 1. Applicable Law

Willful or inadvertent suppression of evidence favorable to appellant by the State constitutes a *Brady* violation. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). Without suppression of favorable evidence, there is no *Brady* violation. *Id.* "'*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.'" *Id.* at 407 (quoting *Hafdahl v. State*, 805 S.W.2d 396, 399 (Tex. Crim. App. 1990)). Whether or not the defense requested the information, the State has a duty to reveal favorable evidence to the defense when the State becomes aware of the evidence. *Id.* Thus, a violation "occurs when a prosecutor 1) fails to disclose evidence 2) which is favorable to the accused 3) that creates a probability sufficient to undermine the confidence in the outcome of the proceeding." *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

The third part of the *Brady* test requires us to determine whether evidence contained on the phone was material, "i.e., created a probability sufficient to undermine the confidence in the outcome of the proceeding." *See Thomas*, 841 S.W.2d at 404. To make this determination we must examine the alleged error in the context of the entire

6

record. *Id.* We determine materiality by examining the alleged error in the context of the entire record and overall strength of the State's case. *Diamond v. State*, 613 S.W.3d 536, 546 (Tex. Crim. App. 2020).

## 2. Discussion

The complainant's grandmother gave a phone to a police officer prior to Guerra's trial that the State disclosed to Guerra during discovery. The prosecutor clarified that the grandmother alleged that the phone contained "nude pictures" that the complainant took of herself. In the trial court, although some evidence suggested that the phone may have belonged to the complainant's grandmother, this evidence was never conclusively established by the State or by Guerra, who posited that the phone belonged to him, the grandmother, or even the complainant. The complainant's grandmother testified at trial on behalf of Guerra. However, neither the State nor Guerra asked the grandmother any questions about the phone in the State's custody. Thus, Guerra did not ask the grandmother for consent to search the phone.[3]

The complainant testified that when visiting her grandmother she used a phone belonging to her grandmother, her grandmother had several phones, she recorded Guerra engaging in a sexual act with her on one of the phones that she borrowed from

---

[3] Whether Guerra needed consent or probable cause to break into the contents of the phone is not an issue before us because on appeal Guerra has not challenged the trial court's ruling requiring that Guerra either get the consent of the phone's owner or establish probable cause to acquire a warrant to review the contents of the phone. *See* TEX. R. APP. P. 38.1; 47.1 (setting out that a court of appeals must address every issue raised); *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record."). Accordingly, we are unable to address this issue.

7

her grandmother, her grandmother took the phone with the recording away from her, the phone she used to record the sexual act was not available for her to use the next time the complainant borrowed a phone from her grandmother, and her grandmother provided a new phone for the complainant to use. The complainant denied on cross-examination by Guerra that her grandmother took the phone away due to "bad pictures."

Guerra provided no evidence in the trial court to support his assertion that the phone the complainant's grandmother gave to the State was the same phone that the complainant used to record the incident.[4] *See Young v. State*, 591 S.W.3d 579, 597–98 (Tex. App.—Austin 2019, pet. ref'd) ("The defendant bears the burden of proving materiality."). The contents of the phone were never exposed, and Guerra did not attempt to identify the owner of the phone when he called the grandmother to testify on his behalf. In fact, Guerra admitted that he did not know who owned the phone, first claiming it was his, then claiming it may have belonged to the complainant, and then again claiming it belonged to him or the grandmother.[5] Furthermore, when the trial court made its ruling regarding the phone and Guerra's ability to cross-examine the complainant, Guerra said, "Yes, sir" and did not object or request that the contents of the phone be revealed under any theory, including *Brady*.

---

[4] Guerra could have asked the complainant's grandmother about ownership of the phone that she gave to the State; however, Guerra chose not to ask the complainant's grandmother any questions about the phone. Guerra was also allowed by the trial court to ask the complainant about the contents of the phone, and she denied having taken nude pictures of herself on any phone. She further stood by her testimony that she recorded Guerra performing sexual acts on her and that she did not know which of her grandmother's multiple phones she used to make this recording.

[5] In addition, although he testified at trial, Guerra did not testify either before or outside the jury's presence that the phone was in fact his.

Subsequently, at a second hearing outside the presence of the jury, Guerra again claimed that the phone belonged to him because it was once at his residence and that he waived his rights to privacy. Again, Guerra did not lodge a legal objection on any basis including *Brady*.[6] *See Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) ("In this case, the appellant was required to make the trial court and the State aware of his complaint before raising it on appeal: The trial court cannot be said to have erred in denying a motion for new trial on a basis that was not presented to it."). In addition, Guerra did not obtain a ruling on his claim that he was entitled to the contents of the phone because it was at his residence.[7] *See id.*

Guerra cites no authority, and we find none, establishing that under these facts, the trial court violated *Brady*. *See Harm*, 183 S.W.3d at 406 ("In *Brady*, the United States Supreme Court concluded that *the suppression by the prosecution* of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution.). Accordingly, we

---

[6] *See Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) ("A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel. When the objection is not specific, and the legal basis is not obvious, it does not serve the purpose of the contemporaneous-objection rule for an appellate court to reach the merits of a forfeitable issue that is essentially raised for the first time on appeal.").

[7] At best, the evidence shows that the complainant testified Guerra sexually abused her, the complainant claimed she recorded one of the sexual incidents on a phone provided by the grandmother, the grandmother had multiple phones, and the phone the grandmother gave to police did not contain a recording of the sexual incident. Based on this meager evidence, the trial court could have reasonably concluded, had the contents of the phone been provided to Guerra, it is not reasonably probable that the outcome of the proceeding would have been different given that the complainant stated that she did not know which phone she used to record the incident. *See Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011) (stating, "'[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense'").

conclude that to the extent Guerra makes this argument, it is inadequately briefed. *See* TEX. R. APP. P. 38.1.

Nonetheless, in his brief, Guerra claims that a *Brady* violation occurred because "[t]he defense requested production of the phone and was overruled," and "[b]ecause the judge refused to order the phone produced, a continuance would have been no benefit." This is the extent of Guerra's argument. Neither one of these claims supports a conclusion that the State violated *Brady*, and Guerra does not appear to make such an assertion. Guerra's main complaint is that the trial court denied him access to the contents of a phone in the State's custody, which Guerra concedes was available to him throughout discovery. However, Guerra does not support this complaint with legal argument, instead asserting that the trial court committed a *Brady* violation.

On appeal, Guerra does not explain how the trial court allegedly violated *Brady*. Instead, he claims that (1) the State failed to disclose the contents of the phone, even though it was unable to do in this case because no one claimed ownership of the phone and no warrant was issued because the trial court ruled there was no probable cause, a finding not challenged on appeal; (2) the contents of the phone contained evidence which is favorable to him, despite admitting he does not know who owns the phone or what information it contains; and (3) that the unknown contents of the phone created a probability sufficient to undermine the confidence in the outcome of the proceeding.[8] *See*

---

[8] Although Guerra claimed ownership of the phone, his claim was equivocal. Moreover, he premised his claim of ownership on a theory that he owned the phone because it had once been at his residence, a fact that has no basis in the record.

10

*Thomas v. State*, 841 S.W.2d at 404.

First, the State could not have failed to disclose the phone's contents to Guerra because it did not have possession of the phone's contents as per the trial court's ruling that no one could break into the phone for lack of probable cause and no consent. *Harm*, 183 S.W.3d at 407 ("*Brady* and its progeny do not require the State to disclose *Brady* material that it does not have in its possession and does not know exists."). In addition, because the trial court did not allow Guerra or the State to view the contents of the phone, there is no way to determine whether the phone contained evidence that is favorable to Guerra. *See id.* On appeal, Guerra concedes that he is unaware of what the phone contained, stating, "The phone, *if* it had no video as the witness insisted would have been vital to show the witness had invented the abuse." (Emphasis added). Likewise, in the trial court, Guerra conceded that he did not know who owned the phone. First, he argued that the phone was his because it had been at his residence, then he argued that it belonged to the grandmother, and finally he argued that the phone may have belonged to the complainant.[9]

Moreover, even assuming the complained-of phone did not contain a video of the incident the complainant claims she recorded, the complainant testified that her grandmother had several phones, and she did not know which of the multiple phones owned by the grandmother she used to record the incident. Thus, such evidence does

---

[9] Had Guerra presented evidence that he owned the phone, he could have waived his rights and allowed an examination of its contents. However, Guerra chose not to do so. He also chose not to ask the grandmother if the phone belonged to her so that he could acquire her consent to examine its contents.

not discredit the complainant. Accordingly, on this limited record, we are unable to conclude that in light of all the evidence, had the phone been provided to Guerra, it is reasonably probable that the outcome of the proceeding would have been different.[10] *See Thomas v. State*, 841 S.W.2d at 404. Therefore, we conclude that Guerra has not met his burden to show that a *Brady* violation occurred.[11] *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002) ("Under *Brady*, the defendant bears the burden

---

[10] We note that the record shows that State did disclose to appellant that the complainant's grandmother gave the police a phone. At a hearing outside the jury's presence, the State informed the trial court as follows: "Judge, we would just add that the phone was provided in discovery. It has been there the whole time. There is no way that we know that this phone belongs to the defendant."

At this hearing, the State informed the trial court that if it could ascertain the owner of the phone, then the parties could obtain consent to extract the data on the phone. However, according to the State, when it made that proposition to appellant, appellant's trial counsel said, "[N]ever mind, never mind, y'all get a search warrant." The gist of the argument hinged on who owned the phone, whether the parties could gain either consent or probable cause to review the phone's contents, and whether it was the actual phone used by the complainant to record the incident. The trial court then ruled that the phone would not be admitted. The trial court reiterated that neither party would discuss the phone at trial; however, it agreed that appellant would be allowed to cross-examine the complainant about whether she recorded an incident of abuse. After discussing the parameters of its ruling, the trial court stated, "Yeah, put Mom first and let's have her see how she answers outside the presence of the jury that question related to this phone and then that way you have got opportunity with [the complainant] if you need to follow-up." Appellant replied, "Yes, sir. Very good."

[11] Nonetheless, "[w]hen *Brady* material is disclosed at trial, the defendant's failure either to object to the admission of the evidence on this basis or to request a continuance waives error or at least indicates that the delay in receiving the evidence was not truly prejudicial." *Rubio v. State*, 534 S.W.3d 20, 27 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (quoting *Perez v. State*, 414 S.W.3d 784, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (internal quotations omitted)); *Cohen v. State*, 966 S.W.2d 756, 763 (Tex. App.—Beaumont 1998, pet. ref'd) ("A defendant who fails to avail himself of this less drastic remedy waives any error resulting from the *Brady* violation."); *see also Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."). Here, Guerra sought access to the contents of the phone in the State's custody on the basis that it may have belonged to him or the grandmother. However, when the trial court held two hearings outside the jury's presence, Guerra did not mention *Brady* and he did not seek a continuance. Thus, Guerra's failure to object on the basis of *Brady* or to seek a continuance waived error, if any, and at minimum, suggests that the tardy disclosure of the evidence was not prejudicial to him. *See Rubio*, 534 S.W.3d at 27; *see also Davila v. State*, No. 13-19-00068-CR, 2020 WL 5051370, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (noting "that [appellant's] failure to request a continuance when *Brady* evidence was disclosed at trial, at minimum, suggests that the tardy disclosure of the evidence was not prejudicial to him.").

12

of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure.").

## B.  Michael Morton Act

The Michael Morton Act, codified in Article 39.14 of the Texas Code of Criminal Procedure, requires the State to disclose to the defendant discoverable items constituting or containing evidence material to any matter involved in the action "only 'after receiving a timely request from the defendant,'" and it "requires a defendant to invoke his right to discovery by request to avail himself of the Act's benefits." *Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). However, there is nothing in this record indicating that Guerra ever made a discovery request under the Michael Morton Act. *See id.*; *see also Garcia v. State*, No. 13-15-00527-CR, 2017 WL 3530926, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2017, no pet.) (mem. op., not designated for publication) (explaining that because nothing in the record indicated that the appellant ever requested disclosure pursuant to the Michael Morton Act, we could not conclude that the State violated it). In addition, the State met its duty pursuant to the Michael Morton Act because it *disclosed* the existence of the phone to Guerra. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(k). Therefore, on this record, we cannot conclude that the State violated the Michael Morton Act. We overrule Guerra's first issue.

## II.  OUTCRY WITNESS

By his second issue, Guerra contends that the trial court erred by allowing a second outcry witness to testify at trial. Specifically, Guerra argues that after designating

13

the complainants' mother as the proper outcry witness, the trial court improperly admitted the child complainants' outcry statements to Monica Castillo, the forensic interviewer from "Cameron County Children's Advocacy Center Monica and Maggie's House."

## A.    Standard of Review and Applicable Law

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The outcry witness must be the first person who is eighteen years or older "to whom the child makes a statement that in some discernible manner described the alleged offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Chapman*, 150 S.W.3d at 812.

Multiple outcry witnesses may testify if their testimony concerns separate, discrete instances of sexual abuse conducted against the victim. *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). The outcry testimony of a second witness is not admissible when the witness merely provides additional details regarding the same instance of sexual abuse. *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd) ("[B]efore more than one outcry witness may testify, it must be determined the outcry concerned different events and was not simply a repetition of the same event told to different individuals."); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex.

14

App.—Texarkana 2000, pet. ref'd) ("[T]he proper outcry witness is not to be determined by comparing statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense."). The outcry witness is not person-specific but rather event-specific. *Broderick*, 35 S.W.3d at 73; *see Mireles v. State*, 413 S.W.3d 98, 104 (Tex. App.—San Antonio 2013, pet. ref'd); *Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (designating the mother as the proper outcry witness for an act of oral conduct, and designating the forensic interviewer as the proper outcry witness for an act of digital penetration).

## B.    Discussion

At a hearing outside the jury's presence, the trial court heard testimony from the complainants' mother, A.E., regarding what the children told her Guerra did. A.E. testified that she has three daughters, D.E., C.E., and B.E. A.E. stated that D.E. and B.E. told her that Guerra put his "part" into each complainant's "part." Regarding C.E., A.E. said, "She would tell me that all the time he would try to get her leg and touch her leg and things like that. He would take out his intimate parts and show them to her." A.E. clarified the C.E. did not say anything else to her about Guerra's acts.

The State informed the trial court that it was requesting for A.E. to serve as the outcry witness for D.E.'s and B.E.'s claims that Guerra "had inserted his part into" their parts. As to C.E., the prosecutor said, "the statement . . . made though was not for something that we have alleged on the indictment. So we could probably bring in through punishment. . . ." The trial court found that A.E. is the "proper and credible reliable [outcry]

15

witness for purposes of [D.E.]" and for B.E. As to C.E., the trial court stated, "we will consider that later, if necessary." A.E. then testified as to the above-stated incidents regarding D.E. and B.E. Guerra did not object.

At a separate hearing outside the presence of the jury, Castillo testified that she interviewed C.E. about the incidents with Guerra. According to Castillo, C.E. told her that Guerra had touched her "private area" with his hand under her clothes and that he had "exposed himself to her." Castillo stated that B.E. told her that Guerra touched her "private area and that it was over and under the clothes." Castillo said, "She also ma[d]e an outcry to him putting his thingy in her mouth and that also he had put his mouth on her boobs and also his thingy inside her private area and also [put his thingy] . . . in her butt." Castillo testified that D.E. said that Guerra had touched her "private area."

The State asked that Castillo be designated as the proper outcry witness as to C.E.'s claim that Guerra touched her female sexual organ under her clothes, B.E.'s claim that Guerra put his "thing in her mouth, put[] his mouth to her [private] area and put[] his [penis] in her anus," and D.E.'s claim that Guerra touched her private area with his hand. Guerra replied that Castillo would not be a proper outcry witness for D.E.'s claim that Guerra "touched her private part" because A.E. testified as to that act. Additionally, Guerra stated that A.E. was the proper outcry witness for B.E.'s claim that Guerra "touched her private area." He also said that A.E. testified about C.E.'s allegation that Guerra touched her. The trial court granted the State's above-described requests: Castillo would serve as the outcry witness for B.E., C.E., and D.E.'s claims set out above.

16

Castillo then testified in front of the jury that (1) C.E. told her that Guerra had touched the inside of her vagina with his hand when she was around six or seven years old; (2) B.E. said that Guerra had sexually abused her by putting his penis in her mouth, put his mouth on her boobs, and put his penis in her butt; and (3) D.E. claimed that when she was under the age of ten, Guerra had touched her private area with his hand.

A.E. did not describe the alleged offenses that the complainants told Castillo occurred. *See Garcia*, 792 S.W.2d at 91. Instead, A.E. talked about the instances where Guerra allegedly penetrated D.E.'s vagina and B.E.'s vagina with his penis. Thus, A.E. did not make any statements concerning the complainants' description of the instances of abuse that they told Castillo occurred. To recap, A.E. only testified as to D.E.'s and B.E.'s allegations that Guerra put his penis in their vaginas, while Castillo testified regarding (1) C.E.'s claim that Guerra touched the inside of her vagina with his hand when she was around six or seven years old; (2) B.E.'s allegation that Guerra sexually abused her by putting his penis in her mouth, put his mouth on her boobs, and put his penis in her butt; and (3) D.E.'s outcry that when she was under the age of ten, Guerra touched her private area with his hand. A.E.'s testimony and Castillo's testimony concern separate, discrete instances of sexual abuse conducted against the victims. *See id. Hernandez*, 973 S.W.2d at 789. Accordingly, the trial court did not abuse its discretion in designating A.E. and Castillo as the outcry witnesses. *See Chapman*, 150 S.W.3d at 812–13. We overrule Guerra's second issue.[12]

---

[12] Guerra also argues that the trial court erred in designating Castillo an outcry witness because she "is simply not within the group of a 'close relative, a trusted teacher, a school counselor, or a neighbor.'"

### III.  CHARGE ERROR

By his third issue, Guerra contends that the trial court erred in instructing the jury that it was not required to be unanimous regarding which underlying sexual offenses Guerra committed for the continuous sexual abuse of a child offense.

### A.  Pertinent Facts

The trial court's jury charge included an instruction on unanimity consistent with section 21.02(d). Specifically, the jury charge stated:

> In regard to the charge of Sexual Abuse of a Child Continuous: Victim under 14, you are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

Under the court's application paragraph for the continuous sexual abuse offense, the trial court instructed the jury to find Guerra guilty of continuous sexual abuse of a child if the jury found beyond a reasonable doubt that Guerra in Cameron County, Texas during a period that was thirty or more days in duration committed two or more acts of sexual abuse against D.E., and/or C.E., and/or B.E. and included eight separate predicate acts

---

Guerra did not preserve this argument because he did not object on this basis at trial. *See* TEX. R. APP. P. 33.1.; *see also Morin v. State*, No. 13-18-00149-CR, 2020 WL 582157, at *4 (Tex. App.—Corpus Christi– Edinburg Feb. 6, 2020, no pet.) (mem. op., not designated for publication) (stating that "the trial court makes no determination on an outcry witness's credibility during an outcry hearing" and determining that whether the person is a "trusted adult" has no bearing on the analysis under article 38.072). Additionally, Guerra argues that because D.E. was nineteen and not disabled at the time of trial, she is unable to invoke the exception to the rule prohibiting hearsay. Guerra did not object on these grounds at trial and has therefore not preserved these issues for our review. *See* TEX. R. APP. P. 33.1.

of sexual abuse as described as follows:

1) Guerra "did then and there with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact with D.E., a pseudonym, by touching the genitals of D.E., a pseudonym," and/or

2) Guerra "did then and there intentionally or knowingly cause the penetration of the sexual organ of D.E., a pseudonym, by the defendant's finger," and/or

3) Guerra "did then and there with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact with C.E., a pseudonym, touching the genitals of C.E., a pseudonym," and/or

4) Guerra "did then and there intentionally or knowingly cause the penetration of the sexual organ of C.E., a pseudonym, by the defendant's finger," and/or

5) Guerra "did then and there intentionally or knowingly cause the penetration of the sexual organ of B.E., a pseudonym, by the defendant's finger," and/or

6) Guerra "did then and there intentionally or knowingly cause the mouth of B.E., a pseudonym, to contact the sexual organ of the defendant," and/or

7) Guerra "did then and there intentionally or knowingly cause the sexual organ of B.E., a pseudonym, to contact the sexual organ of the defendant," and/or

8) Guerra "did then and there intentionally or knowingly cause the anus of B.E., a pseudonym, to contact the sexual organ of the defendant."

## B.     Applicable Law

A person commits the offense of continuous sexual abuse of a child if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and "the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b)(2); *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd). Section 21.02 lists predicate offenses which constitute "acts of sexual abuse" to include the offenses of indecency with a child, TEX.

19

PENAL CODE ANN. § 21.11(a)(1), and aggravated sexual assault. *Id.* § 22.021.

Moreover, section 21.02 creates a single element, a "series" of sexual abuse acts, and it does not make each act a separate offense. *Id.* § 21.02; *Reckart v. State*, 323 S.W.3d 588, 601 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) ("Section 21.02 allows the State to seek a single conviction for a 'series' of acts of sexual abuse with evidence that, during the relevant time period, the accused committed two or more different acts that section 21.02 defines as means of committing a single criminal offense and not as two or more separate criminal offenses."). "Thus, each act of sexual abuse is not an 'element' of the offense; rather, the 'series' is the element of the offense, and the acts of sexual abuse are merely the manner and means of committing an element of the offense." *Reckart*, 323 S.W.3d at 601 (internal citations omitted). The statute requires only unanimity that the defendant, during a period of thirty or more days, committed two or more acts of sexual abuse. *Id.*; *see* TEX. PENAL CODE ANN. § 21.02.

> The Texas Court of Criminal Appeals explained that
>
> the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.

*Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014). Moreover, we assume that the jurors read and understood the charge as a whole. *Hutch v. State*, 922 S.W. 2d 166, 172 (Tex. Crim. App. 1996).

**C.    Discussion**

20

Each underlying act of sexual abuse is not an element of the offense of continuous sexual abuse of a child, and instead are the manner and means of committing the offense. *See Reckart*, 323 S.W.3d at 601. Therefore, the trial court properly instructed that it need not be unanimous about the predicate acts. *See id.*; see also Holton v. State, 487 S.W.3d 600, 607 (Tex. App.—El Paso 2015, no pet.) ("[W]hile the jury must unanimously agree that the 'series' of acts was committed within the specified time frame, the jury is not required to unanimously agree on which specific acts the defendant committed."); *Casey v. State*, 349 S.W.3d 825, 828 (Tex. App.—El Paso 2011, pet. ref'd) ("Article V, § 13, [of the Texas Constitution] does not require jurors to agree unanimously on the manner and means by which the elements were accomplished."). We overrule Guerra's third issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Concurring Memorandum Opinion by Justice Benavides.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
20th day of April, 2023.